72362. SIMS et al. v. WILLOUGHBY et al.
(345 SE2d 626)

DEEN, Presiding Judge.

Ken Willoughby and his parents brought suit against Jane and A. W. Sims for injuries sustained by him when he dived into a swimming pool owned by appellants. The record shows that Ken had been acquainted with Mr. Sims for approximately three years and from time to time had visited the Sims residence and had swum in their pool on several occasions. On the evening in question, eighteen-year-old Ken, who had recently graduated from high school, arrived at the Sims home with the Simses' nephew, Eddie Sims. The young men had a bottle of whiskey, ice, and cokes in their car. Ken admitted that he had about three alcoholic drinks during the course of the evening from the liquor he had in the car. At approximately 10:30-11:00 p.m., he decided to swim in the pool. After his swim, he returned to the house for a few minutes, and then ran out the back door of the house and attempted to dive into the shallow end of the pool at an angle, underneath the buoy rope which was extended across the pool. The rope served to demarcate the shallow end from the diving pool. Ken hit his head on the bottom of the pool directly under the buoy rope and was seriously injured.

In his deposition, Ken testified that he had been swimming in the pool several times and at least once that spring prior to the accident. He admitted knowing that the water was waist-high at the buoy line because he had stood next to it on previous occasions, that he knew the depth of the diving well, that he knew the depth of the water in the area where he had taken his first dive into the pool on the evening in question, and that he knew that there were no depth markers anywhere along the sides of the pool.

Following discovery, appellants moved for summary judgment. Appellees opposed the motion with affidavits attesting to the "negative slope" of the pool whereby the shallowest portion of the pool is in the area located directly under the buoy rope and then gradually slopes back towards the shallow end of the pool until that part of the pool is three inches deeper than the area beneath the buoy rope. The affidavits further state that the negative slope is not readily discoverable to users of the pool. The trial court granted appellants' motion for summary judgment as to all allegations of negligence except on

the issue of negative slope. The Simses filed a renewed motion for summary judgment because this issue had not been previously addressed by them and attached affidavits contending that the pool was purchased and installed by Ideal Pool Corporation according to the seller's specifications and design, that they made no changes in the contour or slope of the bottom either before or after installation, and that they did not know that the pool had a negative slope. The appellants obtained a certificate for immediate review and sought permission from this court to file an interlocutory appeal. This court granted an appeal. *Held*:

In Georgia, a social guest is not an invitee, but a licensee to whom the owner or occupier of the premises owes a duty not to wilfully and wantonly injure. *Barry v. Cantrell*, 150 Ga. App. 439, 440 (258 SE2d 61) (1979); *Laurens v. Rush*, 116 Ga. App. 65 (156 SE2d 482) (1967). In *Patterson v. Thomas*, 118 Ga. App. 326, 328 (163 SE2d 331) (1968), the court found that the duty owed to a social guest was summarized in the American Law Institute's Restatement of the Law (Torts), p. 210, § 342, as follows: "A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if, (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect they will not discover or realize the danger; and (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and (c) the licensees do not know or have reason to know of the condition and the risk involved. Comment: a. The words 'the risk' denote not only the existence of a risk, but also its extent. Thus 'knowledge' of the risk involved in a particular condition implies not only that the condition is recognized as dangerous, but also that the chance of harm and the gravity of the threatened harm are appreciated."

In the instant case, the condition of the pool, i.e., the negative slope, was unknown to the homeowners, and according to appellees' expert witness, the condition was not obvious to the user or readily discernible. Appellees in their brief contend that the duty to warn of an unknown condition is not applicable in this case. Instead, they claim that the issues are (1) whether appellants should have known of the dangerous condition presented by the negative slope of the pool; (2) whether appellants, in the exercise of ordinary care, should have discovered that a potentially dangerous condition existed; and (3) whether the negative slope was the proximate cause of appellee's injuries.

We have reviewed the entire record and find that appellee, by his own deposition testimony, was fully aware of the risk he was taking when he dived into the pool. He was familiar with the pool, he had

dived into it shortly before the accident happened, and he admitted that he knew the water depth below the buoy to be waist-high. Therefore, the fact that the water was three inches shallower under the buoy line than at the shallow end of the pool is irrelevant. To consider the negative or inverse slope as a serious factor in deciding this case, in view of the acknowledgement of the known depth of the water, is to draw a red herring across the track. "Every adult is presumed to be endowed with normal faculties, both mental and physical. [Cit.]" *Simmons v. Classic City Beverages*, 136 Ga. App. 150, 151 (4) (220 SE2d 734) (1975). Where the undisputed evidence shows a failure to exercise ordinary care for one's own safety and the uncontradicted evidence conclusively shows that by the exercise of slight care, a plaintiff could have avoided injury, the trial court errs in denying summary judgment to the defendants. See *Murphy v. D'Youville Condominium Assn.*, 175 Ga. App. 156 (333 SE2d 1) (1985). The trial court's reliance upon *Barry v. Cantrell*, supra, is not justified. In that case, an eleven-year-old child was permitted to use a hammock, one end of which was tied to a dead tree, and was injured when the tree fell. The child did not notice anything wrong with the tree, and the defendants testified that they did not know the tree was defective although it had been topped prior to their purchase of the property some eighteen months previously. The court held that a jury question arose as to whether they should have known of the dangerous condition of the tree. In our case, the plaintiff was fully aware of the depth of the water at the point he chose to dive into the pool, and the appellees cannot be held liable for his lack of concern for his own safety.

*Judgment reversed. Benham and Beasley, JJ., concur.*

DECIDED MAY 2, 1986.

*William S. Shelfer, Jr.*, for appellants.
*J. Patrick O'Brien, Betty Morris, Samuel P. Pierce, Jr.*, for appellees.