74759. SAVAGE v. FLAGLER COMPANY et al.
(364 SE2d 52)

BIRDSONG, Chief Judge.
Summary Judgment — Wrongful Death — Duty to Licensee.

---

The pertinent facts of this unfortunate incident show that in 1979-80 an entity known as Interstate North owned raw land adjacent to Windy Hill Road. The land was sold in 1980 to the Borel Restaurant Corporation, a wholly owned subsidiary of The Stouffer Corporation, for the purpose of building a restaurant to be called the Rusty Scupper. Borel/Stouffer engaged the services of D. E. Hill Engineer, Inc./ Hill Fister Engineers, Inc. as the project engineer to draw necessary land preparation grading requirements to prepare the real estate for a restaurant site with appropriate parking area. Edmond Stevens/Edmond Stevens Associates was engaged as the project architect and designer. The Flagler Corporation was engaged as the contractor charged with construction of the restaurant and parking lot. Hill Fister Engineers drew plans for the parking lot to the north side of the restaurant site. The raw land upon which this project was to be completed was in effect a flat area with access from Windy Hill Road. On the north side, or front of the lot, there was a sharp decline in elevation denominated as a precipice, a cliff or drop-off. From the level land to the bottom of the decline was a distance of approximately 70 feet.

When Flagler drove stakes to commence the land preparation in accordance with the drawings of Hill Fister, Flagler determined the parameters of the parking lot on the north side extended out over the decline. Hill Fister had recommended that a retaining wall be built to retain necessary fill dirt to support the edge of the parking lot on the north side. However because the lot actually extended over the void of the decline, recommendations were obtained from the architect, Stevens. It was decided rather than to build a retaining wall at the north side of the lot, the parking lot would be slightly reduced in size and moved to the south. As a result no retaining wall was necessary and no fill dirt was required to support the completed parking lot.

At the north edge of the parking lot, Flagler constructed a curb in accordance with the engineering drawings to act as a boundary of the parking lot. Beyond the north edge of the curb extending to the precipice, there was a flat grassy strip ranging in width from a few feet to at least 16 feet. At the edge of the steep decline, undergrowth and trees grew prolifically, thus tending to so obscure the edge of the steep decline so that from the parking lot one was not aware that a steep decline existed a few feet beyond the edge of the parking lot.

It further appears that after the restaurant and parking lot had been completed by Flagler and inspected and accepted by Borel/ Stouffer, Borel sold the underlying real estate and improvements to Krause who in turn apparently leased the restaurant business back to Borel/Stouffer for a period of 25 years. This lease was executed in July 1981.

On August 16, 1982, a group of employees from Kennestone Hos-

pital decided to rendezvous at the Rusty Scupper after they got off work at about 10:00 p.m. The Rusty Scupper had a two-for-one "happy hour" and a free sandwich-type supper that evening. This group included Ron Savage. Contrary to Ms. Savage's (the victim's mother's) contention, the evidence showed that the Rusty Scupper closed at about 2:00 a.m. on the morning of August 17. Prior to that time or as the restaurant was closing, the Kennestone group decided to go to another restaurant club to have further drinks and/or entertainment. There apparently were six persons in the group and they all loaded into one car to go to the new club. Sometime around 2:45-3:00 a.m., the group returned to the Rusty Scupper's parking lot to redeem the cars of the other members of the group. Everyone left except Ron Savage and a young woman. The evidence shows that the young woman believed the Rusty Scupper was closed as the parking lot lights were not burning and the restaurant appeared to be closed. Savage and the young woman stood on either side of Savage's car and talked over the top. After a few minutes, Savage excused himself to go to the "bathroom." Savage's companion saw him step over the curb on the north side of the lot, walk across the grass strip and enter "what [she] thought was the edge of the woods." After waiting for a few minutes and when Savage did not return, the young woman called out but Savage did not answer. After a call to the police, a search revealed Savage's body at the base of the precipice after falling over 70 feet and striking his head on a large boulder causing his death.

Savage's mother brought this wrongful death action against Krause the present owner, Hill Fister the land engineers, Stevens the architect-designer, Borel/Stouffer the restaurant owner and builder, Flagler the contractor-builder, Interstate North the original owner, and the restaurant itself. The court granted a motion to dismiss in favor of Interstate North and that action is not a part of this appeal. Krause, Borel/Stouffer and Flagler all moved for summary judgment which was granted by the trial court. It is the grant of summary judgment to these three defendants that forms the basis for the appeal filed in this case by Ms. Savage. *Held*:

1. Ms. Savage predicates her complaint upon the negligence of Krause in failing to correct an inherently dangerous defect in the land, i.e., a hidden peril; upon the negligence of Flagler in not providing a safety shield of some sort when recognizing the inherent danger in the precipice so close to the parking lot; and negligence of Borel/Stouffer in inviting guests to its establishment and exposing guests to a hidden peril without taking adequate precaution to correct the defect or warn the invitees of the peril.

Although the duties and responsibilities of appellees are related, they are distinguishable and different. *Mullis v. Southern Co. Svcs.*, 250 Ga. 90, 92 (296 SE2d 579). Krause, Borel, and Stouffer are either

owners or occupiers of the land and have the duty to exercise ordinary care to keep the premises safe for all invitees. OCGA § 51-3-1. Flagler was the general contractor and presumably constructed the premises in accordance with the plans and guidance of the architect. There is no allegation of negligent construction, only that the contractor was negligent in not providing a safety shield after constructing an obvious hazard.

2. We first will address the obligations of Krause, Borel and Stouffer. As they were either owners or occupiers of the realty, under OCGA § 51-3-1 they had the duty to exercise ordinary care to keep the premises safe for all invitees. However, the duty of an owner or occupier of land is entirely different as to a licensee. That obligation, under OCGA § 51-3-2 imposes liability only for wilful or wanton injury. The accepted test to determine whether one is an invitee or a licensee is whether the party coming onto the business premises had present business relations with the owner or occupier which would render his presence of mutual benefit to both, or whether his presence was for his own convenience, or was for business with one other than the owner or occupier. *Brown v. Hall*, 81 Ga. App. 874, 880 (60 SE2d 414); *Pries v. Atlanta Enterprises*, 66 Ga. App. 464, 467-468 (17 SE2d 902); *Cook v. Southern R. Co.*, 53 Ga. App. 723, 725 (187 SE 274).

Savage first entered the premises of the Rusty Scupper at a time when the premises were open and availed himself of their services. Without question, Savage was an invitee during his first visit to the Rusty Scupper. It is equally clear that the services formerly tendered to Savage and his companions were withdrawn at closing time. Because those services were no longer being offered by the Rusty Scupper, Savage and some of his friends left at closing time and went to another establishment. When Savage and his friends returned about 45 minutes to one hour later, the Rusty Scupper was no longer open for business and there existed no express or implied invitation to use the facilities, and "one who uses the premises of a merchant at a time beyond that to which an implied invitation extends is a mere licensee." *Armstrong v. Sundance Entertainment*, 179 Ga. App. 635, 636 (347 SE2d 292); accord *Clark v. Rich's*, 114 Ga. App. 242 (1) (150 SE2d 716). When Savage and his companions returned to the Rusty Scupper's parking lot at or about 3:00 a.m., his entry thereon was after closing hours, was not for the mutual benefit of the parties, but was for his sole convenience. He was a mere licensee, and the owners and occupiers of the premises owed him only the duty not to wilfully or wantonly injure him. *Frankel v. Antman*, 157 Ga. App. 26, 27 (276 SE2d 87).

"In comparing the status of the licensee with that of a mere trespasser this court has held 'In the case of a licensee there is a slightly higher duty on the part of the owner or proprietor of the premises. He

must not wantonly and wilfully injure the licensee; and since his presence as a result of his license is at all times probable, some care must be taken to anticipate his presence, and ordinary care and diligence must be used to prevent injuring him after his presence is known or reasonably should be anticipated. The fundamental concept in this class of cases, as in that of trespassers, is of a liability only for wilful or wanton injury; but it is usually wilful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be, or reasonably is expected to be, within the range of a dangerous act being done.' " *Barry v. Cantrell*, 150 Ga. App. 439, 440 (258 SE2d 61). " ' "An owner owes to a licensee no duty as to the condition of the premises . . . save that he should not knowingly let him run upon a hidden peril or wilfully cause him harm." ' *Patterson v. Thomas*, 118 Ga. App. 326, 327 (163 SE2d 331) (1968). An owner or occupier is subject to liability to a licensee for injury caused by a condition on the property if the owner (a) knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to the licensee, and should expect the licensee will not realize the danger; and (b) fails to exercise reasonable care to make the condition safe, or to warn the licensee of the condition and risk involved, and (c) the licensee does not know or have reason to know of the condition and the risk." *Robinson v. Turner*, 164 Ga. App. 515, 516 (297 SE2d 522). Of course, this rule is but a restatement of Restatement, Torts, 2d § 342. See *Sims v. Willoughby*, 179 Ga. App. 2, 3 (345 SE2d 626). This Restatement rule is the basis for the legal liability of an owner or occupier because of his superior knowledge of the risk or danger, i.e.: " 'The basis of the proprietor's liability is his superior knowledge and if his [licensee] knows of the condition or hazard there is no duty on the part of the proprietor to warn him and there is no liability for resulting injury because the [licensee] has as much knowledge as the proprietor does and then by voluntarily acting, in view of his knowledge, assumes the risks and dangers incident to the known condition. [Cits.] It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted.' " *Bunch v. Stanton*, 174 Ga. App. 233, 235 (329 SE2d 538).

3. Next we turn to the obligation of Flagler, the general contractor. "While, as a general rule, an independent contractor is liable for injuries caused by his own negligence or that of his servants in the course of his performance of the work or in failing to leave the premises in as safe a condition as they were found [cit.], it is a well established general rule that, where the work of an independent contractor is completed, turned over to, and accepted by the owner, the contractor is not liable to third persons for damages or injuries subsequently suffered by reason of the condition of the work, even though he was

negligent in carrying out the contract, at least, if the defect is not hidden but readily observable on reasonable inspection. [Cits.]

"There are, of course, well recognized exceptions to this general rule. One such exception is that the contractor is liable where the work is a nuisance per se, or inherently or intrinsically dangerous. . . . [Cits.]

"If the work performed by the contractor is not shown to come within one of the exceptions to the general rule, when the work is finished by him and accepted by his employer, the liability of the former generally ceases and the employer becomes answerable for damages which may thereafter accrue from the defective conditions of the work." *Queen v. Craven*, 95 Ga. App. 178, 183-184 (97 SE2d 523); accord *Hawkins v. Turner*, 166 Ga. App. 50, 54 (303 SE2d 164); *Wilner's v. Fine*, 153 Ga. App. 591 (1) (266 SE2d 278); *PPG Indus. v. Genson*, 135 Ga. App. 248 (2) (217 SE2d 479); *Peachtree North Apts. v. Huffman-Wolfe Co.*, 126 Ga. App. 594 (191 SE2d 485). In determining whether the contractor is to be held liable for damages resulting from work he has been employed to do, " 'it is usually necessary to look for guidance to the question whether the injury resulted from the improper plans or directions by which his employment was defined, or from the improper execution of work properly planned. In such cases, if it appears that the contractor has followed the plans and directions of his employer and injury has resulted, the employer, and not the contractor, is to be held liable. For unskilful or negligent execution of the work the contractor (and usually not the employer) is liable. . . .' " *PPG Indus.*, supra at 251; accord *Bell & Son v. Kidd & Roberts*, 5 Ga. App. 518, 520 (63 SE 607). Where the construction has resulted in a latent peril or hazard, we have held that "[w]e do not agree that a contractor is entitled to put on blinders and ignore serious and dangerous defects in a design given to the contractor to execute. [Cit.] . . . Under those circumstances, we are not willing to hold that [a contractor] can, as a matter of law, escape liability when the evidence could authorize a conclusion that the design was defective and that [the contractor] should have known that the design would result in [construction] dangerous to its users." *Shetter v. Davis Bros.*, 163 Ga. App. 230, 231 (293 SE2d 397); accord *Cooper v. Garmon Bros. Contractors*, 166 Ga. App. 839, 840 (305 SE2d 499).

4. Of course, there is another duty to which all contractors, owners and occupiers of land are subject, that is "the general duty one owes to all the world not to subject them to an unreasonable risk of harm. This has been expressed as follows: '. . . negligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm.' Restatement, Torts, 2d, § 282." *Bradley Center v. Wessner*, 250 Ga. 199, 201 (296 SE2d 693); accord *Sutter v. Hutchings*, 254 Ga. 194, 197 (327 SE2d 716). Hence,

"[t]here are well recognized exceptions to the general rule of non-liability of contractors who execute plans furnished by others. One such exception is that the contractor is liable where the work is inherently dangerous to third parties. [Cits.]" *Powell v. Ledbetter Bros.*, 251 Ga. 649, 651 (307 SE2d 663). This obligation of a contractor is essentially the same as that stated earlier in the Restatement, § 342, as applying to occupiers of land. Thus, at issue in the instant appeal is whether it was error for the trial court to hold as a matter of law that there was no material issue as to whether the construction of the Rusty Scupper and its parking lot, which was only a few feet, at one point, from a precipice 70 feet in height, was neither a "hidden peril," "inherently dangerous" to others, nor did it "subject [others] to an unreasonable risk of harm."

We must consider one further critical piece of evidence submitted to the trial court. Joel Mabry, the superintendent for the general contractor, testified that he had discussions with representatives of the architect and the owners and occupiers of the realty: "We talked about the insurance rate and again, since it was a bar that served alcoholic beverages, people have a tendency that drink a lot of beer to urinate pretty often, so we did say something jokingly about a guy walking out in the parking lot, and too much to drink, might step off [the cliff] trying to take a leak in the bushes there." Mabry also stated that he had discussed with the representatives of the architect and the owners the fact that "the areas approaching the cliff where they were so close to the cliff . . . if someone, you know, pulled up out in the parking lot there and left his headlights on, that there were some places that it would have been difficult to step in front of the automobile to raise the hood to try to jump the battery off." Hence, from the evidence presented to the trial court, the exact incident that occurred in the instant case was foreseen by the contractor and discussed with the architect and owners. The peril was recognized but not remedied. Neither the trial court nor this court can hold, as a matter of law, that the placement of the parking area of a business establishment that sells alcoholic beverages so near to a 70-foot cliff, without a warning sign, or a safety barrier of some type, does not subject patrons of that establishment to an "unreasonable risk of harm," and was not a "hidden peril," nor "inherently dangerous." These types of issues involving negligence, which "is a matter of risk — that is to say, of recognizable danger of injury . . . [or] 'conduct which involves an unreasonably great risk of causing damage'" (Prosser, Law of Torts (4th ed.), p. 145, § 31) are for the jury, and a trial court should not remove the issue from a jury except in plain and indisputable cases. *Atlanta Coca-Cola Bottling Co. v. Jones*, 236 Ga. 448 (224 SE2d 25). Further, the issue of foreseeability as to injury caused by this hazard, and the duty to exercise ordinary care to protect an-

other from injury is generally for a jury's determination rather than summary adjudication by the courts. *Lay v. Munford, Inc.*, 235 Ga. 340, 341 (219 SE2d 416). On motion for summary judgment, the respondent is to be given the benefit of all reasonable doubts and inferences toward creating an issue (*Blount v. Seckinger Realty Co.*, 167 Ga. App. 778 (1) (307 SE2d 683)), and neither the presence nor absence of negligence should be summarily adjudicated unless only one conclusion is permissible. *Tanner v. Ayer*, 150 Ga. App. 709, 710 (258 SE2d 545). We find that more than one reasonable conclusion is permissible as to whether or not the general contractor, the owners and occupier of the realty, were negligent in constructing a parking lot in such close proximity to a recognized hazard, without any warning signs or safety shield of any type. *Shetter*, supra at 231. The trial court erred in granting summary judgment to the defendants.

*Judgment reversed. McMurray, P. J., Banke, P. J., Pope, Benham, and Beasley, JJ., concur. Deen, P. J., Carley, and Sognier, JJ., dissent.*

DEEN, Presiding Judge, dissenting.

While concurring with the majority opinion's exposition of the law concerning the duty of care an owner or occupier of land owes a licensee, I disagree with the conclusion that a factual issue exists concerning the observance of that duty and foreseeability of the injury in this case.

Savage was an invitee when he first entered the restaurant's property for the mutual benefit of the restaurant and himself as patron. Somewhere in the process of going to another bar because the Rusty Scupper closed for the night, leaving his automobile parked in the restaurant's lot for approximately an hour, and then returning and talking with a friend for a while in the parking lot, Savage's status changed from invitee to licensee. At the time he went into the adjoining woods to urinate, his status may even have been that of trespasser. Compare *Ginn v. Renaldo, Inc.* 183 Ga. App. 618 (359 SE2d 390) (1987), wherein the bar patron arrived as an invitee but departed as a trespasser.

In a somewhat similar situation, a Yale graduate left a class reunion party (held in a building formerly occupied by the Wolf's Head Society) to urinate. He had attended the party for approximately two hours, and when he left, the party was over and the building was closed. After talking to others for five or ten minutes, he proceeded towards a grassy plot by a tree, intending to urinate by a bush, but he tripped over a parapet on top of a retaining wall. He fell to a lower level and was injured. *Guilford v. Yale Univ.*, 128 Conn. 449 (23 A2d 917) (1942). The court in *Guilford* upheld a jury verdict, in part because Guilford had not exceeded the limits of his invitation. Even the

majority opinion acknowledges that Savage was no longer an invitee at the time he fell to his death.

Under the circumstances of the instant case, the only reasonable conclusion is that the appellees did not unreasonably subject Savage to a risk of harm. The restaurant provided rest room facilities on the premises for its patrons, and the appellees should not be held to a standard of expecting its patrons instead to seek relief in the areas adjoining the restaurant parking lot, much less expecting a former patron who had gone to another bar to continue drinking after the restaurant closed and who had returned to the restaurant parking lot an hour later only to retrieve his car. The majority opinion misplaces its reliance upon the deposition testimony of the contractor's foreman, who remembered that they had jokingly reflected about the possibility of someone urinating in the bushes and falling, because the real issue is whether the appellees unreasonably dismissed this contingency as unlikely.

It is plain and indisputable that what happened in this case was not reasonably to be expected. For the sake of all the Savages of the world seeking relief, no doubt it would have been better for the appellees to have erected some kind of fence, hand rail, barrier or riprap (volley-ball sized rocks). However the appellees breached no duty by failing to do so, and the trial court properly granted summary judgment for the appellees.

Accordingly, I must respectfully dissent. I am authorized to state that Judge Carley joins in this dissent.

DECIDED NOVEMBER 9, 1987 —
REHEARINGS DENIED DECEMBER 16, 1987 — 

*Mike Treadaway*, for appellant.

*Michael J. Goldman, Lisa H. Ihns, Anthony J. McGinley, Tommy T. Holland, J. Kenneth Moorman, Alan L. Newman*, for appellees.

*Jonathan M. Engram*, amicus curiae.