A97A0238. HARTLEY et al. v. MACON BACON TUNE, INC.
(490 SE2d 403)

BIRDSONG, Presiding Judge.

Robin T. and Teresa L. Hartley appeal from the grant of summary judgment to Macon Bacon Tune, Inc. d/b/a Precision Tune in the Hartleys' suit arising from an incident in which Robin T. Hartley slipped and fell in Precision Tune's place of business. Teresa L. Hartley's claim is for her loss of consortium.

The record shows that on the day in question Hartley accompanied his friend, Marsh, to Precision Tune's premises so Marsh could have his car checked out by his son-in-law, a Precision Tune employee. Even though Hartley may not have known it, the record shows that Marsh previously had been ordered by Precision Tune's owner not to return to the premises because Marsh, according to the owner, was always trying to get work done for free by his son-in-law and Marsh was a nuisance to have in the shop because of his drinking. Marsh did not pay for any work done that day. The record further shows, however, that Hartley had no purpose on the premises other than to accompany Marsh. They were hanging out together.

The record also shows that it was raining and rain water was running off the cars brought in for repairs. It was obvious the shop floor was wet.

When Marsh and Hartley arrived at Precision Tune, the son-in-law waved them in and Marsh pulled his car in one of the mechanic's bays to be checked out. Hartley, wearing flip flop sandals, got out of the passenger side of the car and started to walk around to the front when he alleges he stepped in some oil or something and fell. He testified that he later saw he fell in "a big puddle of oil" which looked like new oil; it was light colored.

Hartley also testified that if he had been looking down, he could have seen the oil, but he was looking at Marsh's son-in-law. The oil did not blend into the floor; anyone looking down could have seen the oil, and there was nothing to prevent him from seeing the puddle.

After discovery, Precision Tune moved for and was granted summary judgment. The Hartleys then filed this appeal contending that the trial court erred by granting summary judgment because genuine issues of material fact remained for trial. *Held*:

1. The standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474). Further, when ruling on a motion for summary judgment, the nonmoving party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843).

2. Our initial consideration is to determine the legal status that Hartley enjoyed while he was on Precision Tune's premises. "The elements of legal liability of the owner or proprietor of premises for injuries occasioned to persons thereon[ ] vary according to whether the person injured was, at the time of the injury, a trespasser, a licensee, a visitor under invitation, express or implied, or a person standing in some special relation recognized by law. The owner or proprietor of premises is liable to a licensee only for wilful or wanton injury. As to

an invitee, the owner or proprietor owes the duty to exercise ordinary care. Whether a person is an invitee or a licensee depends upon the nature of his relation or contact with the owner of the premises. If the relationship solely benefits the injured person, he is at most a licensee. If the relationship is one of mutual interest to the parties, the injured party is an invitee of the owner. The enterprise must be mutual to the extent that each party is lawfully interested therein; or that there is common interest or mutual advantage involved. Monetary consideration is not essential." (Citation and punctuation omitted.) *Walker v. Daniels*, 200 Ga. App. 150, 154 (407 SE2d 70). As Hartley's deposition shows that he was merely in Precision Tune to accompany Marsh, he was a licensee. *Restaura, Inc. v. Singleton*, 216 Ga. App. 887, 888 (456 SE2d 219). See Adams & Adams, Ga. Law of Torts (1996 ed.), pp. 97-99, § 4-1. Because there is no evidence showing Precision Tune wilfully or wantonly injured Hartley, the trial court did not err by granting summary judgment to Precision Tune. Additionally, even applying the higher standards of care owed to a business invitee, the trial court did not err by granting summary judgment to Precision Tune because the record shows that Hartley produced no evidence that Precision Tune had actual or constructive knowledge of any oil on the floor and the record also shows that Hartley, by not looking where he was going, did not exercise ordinary care for his own safety.

3. It has been asserted that once a licensee's presence is known to a proprietor, a licensee is entitled to the same standard of care as an invitee in a premises liability case. Although this concept unfortunately has been misapplied in some earlier premises liability cases, recent Supreme Court cases establish that it is used properly only in cases involving a defendant's active negligence. See *Lipham v. Federated Dept. Stores*, 263 Ga. 865 (440 SE2d 193) (differentiating between cases concerning conditions of the premises and active negligence); *Trammell v. Baird*, 262 Ga. 124, 126 (413 SE2d 445) ("[h]owever, where the alleged negligence arises from static or passive conditions, the landowner owes the anticipated trespasser a duty not to injure him wilfully or wantonly"); *Wade v. Mitchell*, 206 Ga. App. 265, 266 (2) (b) (424 SE2d 810) ("[a]ppellant was not injured by any *defect* on the truck stop premises *pre-existing* his arrival thereon"). See also Adams & Adams, supra at p. 69, § 3-5 ("[n]ote that this liability deals with active negligence and not with a static condition"). Thus, it is wrong to apply a rule applicable to active negligence cases in cases alleging a defect existing on the premises. "If the injury arises not from a preexisting defect in the premises but from a claim of active negligence arising from the owner's or occupant's alleged acts or omissions occurring at the time the plaintiff was on the premises, the liability test is the general negligence standard of

foreseeability, rather than the more restrictive superior knowledge test." Adams & Adams, supra at p. 99, § 4-1.

Where an injury is caused by a condition on the property, "the act of the owner must be a wilful and wanton act in order for the injured party to recover. While, where the presence of the injured party on the owner's premises is known or should have been anticipated, the duty owing to him, whether he be classified as a trespasser or licensee is to use ordinary care to avoid inflicting injuries on him, it is also usually wilful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be or may reasonably be expected to be, *within range of a dangerous act being done or a hidden peril* on one's premises." (Citation and punctuation omitted; emphasis in original and supplied.) *Brooks v. Logan*, 134 Ga. App. 226, 228 (1) (213 SE2d 916). Therefore, because no evidence shows the oil came to be on the floor while Hartley was on the premises, the active negligence cases do not apply. *Trammell v. Baird*, supra.

Moreover, it is not clear how this case is different from the cases in which an owner has intentionally placed a slippery substance on the floor, or all the numerous cases in which it is alleged that foreign substances have been dropped, spilled, or left on floors. If adopted, the result of the active negligence analysis would be to eliminate the entire existing body of law regulating premises liability cases.

4. Any effort to disregard *Alterman Foods v. Ligon*, 246 Ga. 620 (272 SE2d 327), must be unsuccessful, if constitutional principles are to prevail. The Supreme Court of Georgia has not rejected or revised *Alterman Foods*. Therefore, the *Alterman Foods* standards are binding on this Court even though some may believe there is a better concept for allocating the burdens on the parties in these cases. "The decisions of the Supreme Court shall bind all other courts as precedents." Ga. Const. 1983, Art. VI, Sec. VI, Par. VI; *Coffey v. Wal-Mart Stores*, 224 Ga. App. 824, 827 (482 SE2d 720).

In the same manner, this Court cannot deem the guidance on foreign substance cases in *Alterman Foods* as mere dicta. Pretermitting whether this Court could ever reject guidance provided by the Supreme Court in cases of gravity and public importance on this basis (see Ga. Const. 1983, Art. VI, Sec. VI, Par. V; OCGA § 15-2-8) is the fact that *Alterman Foods* has been the seminal case in this area of the law for over 16 years. Thus, even if the foreign substance guidance could have been considered dicta originally, common sense and judicial stability dictate that it is too late for that now. *Alterman Foods* has been cited with approval, followed, and relied upon by this Court and our Supreme Court (see *Martin v. Sears, Roebuck & Co.*, 253 Ga. 337 (320 SE2d 174)) and cases relying upon *Alterman Foods* have been cited, followed, and relied upon by this Court and our Supreme Court in cases too numerous to mention. Consequently, the

*Alterman Foods* principles are too well established in our law to be swept away merely by claiming that they are dicta. *Alterman Foods* and the cases citing *Alterman Foods* are the controlling precedent in the area of foreign substance slip and fall cases.

5. We also cannot otherwise avoid the guidance of our Supreme Court in *Alterman Foods* by attempting to redefine the term "foreign substances." Oil on the floor of a garage or service station which was not intentionally applied to the floor by the proprietor or his employees is a foreign substance within the meaning of that term in *Alterman Foods*. "In the majority of the so-called 'slip and fall' cases the plaintiff alleges either that he slipped on a foreign substance — grit, vegetable leaves, trash, objects which have fallen from store shelves, etc. — on defendant's floor, or that defendant's floor has been made dangerously slippery by waxing, oiling, or otherwise treating it." Id. at 622. Thus, because the Supreme Court included "objects which have fallen from store shelves, etc.," as an example of foreign substances, any reliance on the concept that oil in a garage is an indigenous substance rather than a foreign substance is not well taken. This oil was a foreign substance within the meaning of *Alterman Foods*, supra.

Further, assuming that Hartley could be treated as a business invitee, to state a cause of action in this case he would be required to show (1) that Precision Tune had actual or constructive knowledge of the oil and (2) that he was without knowledge of the oil or for some reason attributable to Precision Tune was prevented from discovering the oil. *Alterman Foods*, supra at 623; *Coffey v. Wal-Mart*, supra at 826. Hartley's evidence failed to show either. Instead, Hartley showed only that he fell at Precision Tune.

"Of course, merely showing that the plaintiff fell establishes nothing. Proof of nothing more than the occurrence of plaintiff's fall is insufficient to establish defendant's negligence. To presume that because a customer falls in a store that the proprietor has somehow been negligent would make the proprietor an insurer of his customer's safety which he is not in this state." (Citations and punctuation omitted.) *Coffey v. Wal-Mart*, supra at 828. Therefore, even under these circumstances summary judgment for Precision Tune would be warranted.

6. This Court also cannot do away with the obligation of plaintiffs to make use of all their senses to discover and avoid those things that might hurt them. *Alterman Foods*, supra at 623. To say that the trial court could not infer that Hartley would not avoid an obvious danger relies upon the concept that if Hartley had bothered to look, had seen the oil he claims was on the floor, and had stepped in it anyway, he should still recover. Under this theory, one apparently must assume that someone facing an apparent danger would intentionally

disregard it and that a proprietor must somehow take action to protect these customers from themselves. This is not our law, and it is contrary to human nature as well as *Alterman Foods* and the doctrine of assumption of the risk.

7. Further, allowing Hartley to recover would mean ignoring *Alterman Foods'* superior knowledge test. Pretermitting whether Precision Tune had constructive or actual knowledge of the oil on the floor is whether Hartley should have known of the oil. "[N]ot only must the plaintiff show that the defendant had knowledge of the presence of the foreign substance, but the plaintiff must also show that he was without knowledge of its presence. The customer must exercise ordinary care for his own safety, and must by the same degree of care avoid the effect of the merchant's negligence after it becomes apparent to him or in the exercise of ordinary care he should have learned of it. He must make use of all his senses in a reasonable measure amounting to ordinary care in discovering and avoiding those things that might cause hurt to him." (Citation and punctuation omitted.) *Alterman Foods*, supra at 623. Hartley's excuse for failing to exercise ordinary care for his own safety is that he was looking at his friend's son-in-law. That is not a distraction that our law recognizes. *Coffey v. Wal-Mart Stores*, supra at 829; *Redding v. Sinclair Refining Co.*, 105 Ga. App. 375, 378 (124 SE2d 688). *Barentine v. Kroger Co.*, 264 Ga. 224 (443 SE2d 485), which is not expressly disposed of by a distraction theory, is distinguishable and not controlling.

8. Additionally, this Court must take into account the elements required to establish a cause of action in a foreign substance slip and fall case and not misconstrue the burden on defendant/movants necessary to prevail at summary judgment in these cases. Under *Alterman Foods*, and the legion of cases relying on that case, to establish his cause of action, Hartley had the burden of showing that Precision Tune had actual or constructive knowledge of the oil and that he was without knowledge of the oil or for some reason attributable to Precision Tune was prevented from discovering the oil. *Alterman Foods*, supra at 623. These elements are part of the plaintiffs' cause of action, and, consequently, are not affirmative defenses.

Significantly, however, the Supreme Court has changed one important factor concerning these cases. In *Alterman Foods* the Supreme Court stated that the movant had the burden of establishing the nonexistence of any genuine issue of material fact. Id. at 625. After *Lau's Corp. v. Haskins*, supra, however, this is no longer true. "[A]t summary judgment a party who will not bear the burden of proof at trial need not conclusively prove the opposite of each element of the non-moving party's case. Rather, that party must demonstrate by reference to evidence in the record that there is an absence of evidence to support at least one essential element of the non-moving

party's case. In other words, summary judgment is appropriate when the court, viewing all the facts and reasonable inferences from those facts in a light most favorable to the non-moving party, concludes that the evidence does not create a triable issue as to each essential element of the case. In so holding, we overrule anything to the contrary. [Cits.]" Id. at 495 (4). Thus, after *Lau's Corp.*, movants for summary judgment are no longer required to disprove the essential elements of a plaintiff's case. See also *Evans v. Heard*, 264 Ga. 239, 241 (442 SE2d 753).

Because Precision Tune discharged its burden under *Lau's Corp.* by showing there was no evidence in the record to show that it had actual or constructive knowledge of the substance on the floor, Hartley could not rest on his pleadings, but was required to point to specific evidence giving rise to a triable issue on the superior knowledge issue. *Lau's Corp.*, supra at 491. As Hartley did not do so, the trial court did not err by granting summary judgment to Precision Tune.

Further, Hartley also had the burden of showing that the oil was on the floor for a length of time sufficient for knowledge of the oil to be imputed to Precision Tune before Precision Tune had any obligation to show its inspection and cleaning procedures. Cases holding that a proprietor must first show that a reasonable inspection and cleaning program was used before the plaintiff is required to show how long the substance was on the floor either were decided before *Lau's Corp.* eliminated the burden on movants to establish the nonexistence of any genuine issue of material fact or disprove the plaintiff's cause of action, or were decided after *Lau's Corp.* but erroneously relied upon implicitly overruled authorities decided before the decision in *Lau's Corp.*

Therefore, Precision Tune had no burden to show that it had an inspection procedure in place. As Hartley produced no evidence that Precision Tune had any knowledge, actual or constructive, that the oil was on the floor, he failed to carry his burden on one of the essential elements of his claim (*Moore v. Food Assoc.*, 210 Ga. App. 780, 782 (437 SE2d 832)) and his claim must tumble like a "house of cards." *Lau's Corp.*, supra at 491.

9. Because Ms. Hartley's consortium claim is derivative of her husband's claim, her claim must also fail.

Accordingly, the trial court did not err by granting summary judgment to Macon Bacon Tune, Inc. d/b/a Precision Tune.

*Judgment affirmed. Andrews, C. J., Pope, P. J., Johnson and Ruffin, JJ., concur. Blackburn, J., concurs specially. Eldridge, J., dissents.*

BLACKBURN, Judge, concurring specially.

I concur specially, because I do not agree with everything that is said in the majority opinion. Its result is appropriate however under

the past holdings of this Court and our Supreme Court. I sympathize with the dissent's dissatisfaction and frustration with the present state of premises liability analysis, which sentiments I expressed in my dissent in *Blake v. Kroger Co.*, 224 Ga. App. 140 (480 SE2d 199) (1996). It is clear, however, that under the binding precedent of Supreme Court rulings, this Court is without authority to modify the law or create new rules of analysis, which are inconsistent therewith. Neither does this Court have the authority to overrule the Supreme Court as the dissent would effectively do. This is true without regard to the merits of the suggested changes. Only the Supreme Court or the General Assembly of Georgia has the authority to change the law of premises liability under the present state of the law.

ELDRIDGE, Judge, dissenting.

While appellants' case, if tried before a jury, would probably result in a defendant's verdict, that is not the standard for a grant of summary judgment. Plaintiffs are constitutionally *entitled* to have their case decided by a jury rather than by the trial court and by this Court. Ga. Const. of 1983, Art. I, Sec. I, Par. XI (a); OCGA § 9-11-56; *Summer-Minter & Assoc. v. Giordano*, 231 Ga. 601 (203 SE2d 173) (1974); *Ginn v. Morgan*, 225 Ga. 192 (167 SE2d 393) (1969); *Butterworth v. Pettitt*, 223 Ga. 355 (155 SE2d 20) (1967). Because appellee failed in its burden of proof on summary judgment, appellants are entitled to a jury trial; therefore, I must respectfully dissent.

1. Many slip and fall cases, by the facts and circumstances of the case, are appropriate for summary adjudication, because the plaintiff lacks proof of the cause of the fall, or the owner/occupier lacks actual or constructive knowledge of the dangerous condition caused by the presence of a foreign substance. However, since *Alterman Foods v. Ligon*, 246 Ga. 620 (272 SE2d 327) (1980), this Court has followed dicta in the opinion to create an extensive body of decisions that radically departs from the jurisprudence of tort law and creates a unique ability for trial courts to summarily dispose of slip and fall cases by summary judgment. This body of case law has culminated in the unlikely proposition that if the plaintiff fails to continuously look where each step is placed and slips and falls, then such failure to look, in and of itself, constitutes contributory negligence without further proof of recognition or appreciation of the danger; of opportunity to avoid upon discovery and appreciation of the danger; of proximate causation; or of consideration of the doctrine of comparative negligence. Unfortunately, *Robinson v. Kroger Co.*, 222 Ga. App. 711 (476 SE2d 29) (1996), is but the logical progression of such method of analysis.

Further, this problem of analysis has been compounded by a misapplication of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474)

(1991), because in many recent slip and fall cases, unlike in *Lau's Corp.*, the respondent is either *not* given the benefit of all reasonable, favorable inferences, or the converse situation exists, i.e., no *unfavorable* inferences of fact are made against the respondent. Moreover, under this misapplication of *Lau's Corp.*, there is no burden placed upon the movant, even as to issues such as contributory negligence or assumption of the risk, upon which issues the defendant *does* have the burden of proof at trial. *Lau's Corp.* held that a movant could show the absence of an essential element of respondent's case, not only by presenting evidence which negates or disproves such alleged element, but also by showing that there was *no evidence* that respondent could produce to demonstrate the existence of such element.

Much of the majority's analysis is based upon another misapplication of dicta; this time from *Summer-Minter v. Giordano*, supra at 604, which states, "It is thus seen that it is the duty of each party at the hearing on the motion for summary judgment to present his entire case in full [*as a mini-trial*]." However, the context of such statement was under OCGA § 9-11-56 (e), *after* the movant had carried its burden of proof and had successfully pierced the respondent's pleadings on an essential element of the case. The respondent has no burden of proof unless and until the movant has first discharged its burden of proof and, then, only as to issues upon which the respondent *would* have the burden of proof at trial. *Hodge v. SADA Enterprises*, 217 Ga. App. 688, 690 (458 SE2d 876) (1995).

In slip and fall cases, the majority would deem that proof of contributory negligence has been fully satisfied for summary judgment purposes with only the plaintiff's failure to look where the step was made; the majority would not require the additional, factually supported elements of: (1) opportunity to avoid the danger, (2) appreciation of the danger, and (3) proximate cause, which elements *must be proven* by the movant defendant on summary judgment, as it must be proven by the defense at trial. Under tort law, if proof of such elements of contributory negligence is required, then the trial court, as well as this Court, has found the necessary elements on summary judgment in the case sub judice by making *negative* inferences against the plaintiff and in favor of the defendant from evidence of plaintiff's failure to look, alone. Clearly, evidence of failure to look, alone, is insufficient to establish prima facie all the elements of contributory negligence.

On a motion for summary judgment under OCGA § 9-11-56, the defendant, as the moving party, may prevail by "piercing the plaintiff's pleadings," i.e., demonstrating that the plaintiff will be unable to prevail at trial, even when all doubts are resolved in favor of the plaintiff, because there is no issue of material fact as to at least one essential element of the plaintiff's prima facie case. OCGA § 9-11-56

(c); *Lau's Corp.*, supra; *Greenforest Baptist Church v. Shropshire*, 221 Ga. App. 465 (471 SE2d 547) (1996); *Crosson v. Lancaster*, 207 Ga. App. 404 (427 SE2d 864) (1993). The defendant, who will not bear the burden of proof at trial, may accomplish this either (1) by presenting evidence which negates an essential element of the plaintiff's claim, i.e., affirmatively disproving the element with evidence which makes it *impossible* for the plaintiff to prove the element at trial, or (2) by showing "an absence of evidence to support the [plaintiff's] case" as to any essential element. *Lau's Corp.*, supra at 491, 495; see, e.g., *Caven v. Warehouse Home Furnishings &c.*, 209 Ga. App. 706, 707 (434 SE2d 532) (1993). However, a defendant may not prevail simply by presenting contradictory evidence, as such evidence serves only to create an issue for jury resolution. *Davis v. Piedmont Hosp.*, 222 Ga. App. 97 (473 SE2d 531) (1996); *Svc. Merchandise v. Jackson*, 221 Ga. App. 897 (473 SE2d 209) (1996). Further, all reasonable inferences from the evidence presented must be given in favor of the plaintiff, as the nonmoving party; a trial court is precluded from drawing negative inferences against the plaintiff from evidence presented by a defendant on a motion for summary judgment.[1] See *Lau's Corp.*, supra; *Millar Elevator Svc. Co. v. O'Shields*, 222 Ga. App. 456 (475 SE2d 188) (1996); *Svc. Merchandise v. Jackson*, supra; *Harvey v. McLaughlin*, 198 Ga. App. 105 (400 SE2d 635) (1990); *Holland v. Sanfax Corp.*, supra at 5. If the defendant is able to pierce the plaintiff's pleadings by showing that no jury issue exists as to an essential element of the plaintiff's claim, the burden of *production* shifts to the plaintiff, i.e., the plaintiff will survive summary judgment by presenting *any* evidence which establishes a jury issue regarding that element. See OCGA § 9-11-56 (e); *Lau's Corp.*, supra. Even slight evidence will be sufficient to satisfy the plaintiff's burden of production on a motion for summary judgment; such evidence may include favorable inferences drawn by the court from the evidence presented.[2] See *Stuckey Diamonds v. Jones*, 195 Ga. App. 351 (393 SE2d 706) (1990); *Mealer v. Gen. Cinema Beverages &c.*, 190 Ga. App. 419 (379 SE2d 192) (1989). Further, the plaintiff is not required "to respond to issues which are not raised in the motion for summary judgment or to present [his] entire case on all allegations in the com-

---

[1] Favorable inferences may be drawn on behalf of the non-moving party, since the granting of summary judgment deprives the non-moving party of his right to trial by jury contrary to the Constitution of the State of Georgia and the United States; "The act cannot deprive a party of the opportunity to have a trial of a genuine issue as to any material fact." *Holland v. Sanfax Corp.*, 106 Ga. App. 1, 5 (126 SE2d 442) (1962); see also Ga. Const. of 1983, Art. I, Sec. I, Par. XI; U. S. Const., Amend. VII.

[2] However, " '[a]n inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility.' . . . [Cit.]" *Edwards v. Campbell Taggart Baking Cos.*, 219 Ga. App. 806, 807 (1) (466 SE2d 911) (1996).

plaint." *Hodge v. SADA Enterprises*, supra at 690. Therefore, under *Lau's Corp.*, supra, the defendant is entitled to summary judgment if it is able to pierce the plaintiff's pleadings as to any material element, and the plaintiff is unable to respond with any evidence to create a jury issue as to that element.

However, even if a defendant is unable to pierce the plaintiff's pleadings, it may still prevail at summary judgment by presenting evidence which establishes a prima facie affirmative defense. In so doing, the defendant as the moving party seeking summary judgment may not rely on inferences from the evidence presented, as all inferences must be drawn in favor of the plaintiff, as the nonmoving party. Once the defendant satisfies its burden by presenting evidence to support each element of the affirmative defense, the burden of production shifts to the plaintiff, who will survive summary judgment by presenting *any* evidence which creates a jury issue on an element of the affirmative defense. See *Barentine v. Kroger Co.*, 264 Ga. 224, 225 (443 SE2d 485) (1994); *Lau's Corp.*, supra; *Hornbuckle Wholesale Florist &c. v. Castellaw*, 223 Ga. App. 198 (477 SE2d 348) (1996) (McMurray, P. J., dissenting); *J. H. Harvey Co. v. Edwards*, 219 Ga. App. 697, 698 (466 SE2d 246) (1995); *Sheriff's Best Buy v. Davis*, 215 Ga. App. 290, 291 (450 SE2d 319) (1994). However, if the plaintiff is unable to meet this burden, the defendant is entitled to summary judgment as a matter of law.

Clearly, a defendant has the burden of proof at trial of the defenses of assumption of the risk or of contributory negligence. It follows that, on summary judgment, the defendant can satisfy such burden of proof only by producing evidence as to each such element of the defense, and even then, such burden of *proof* does not shift: after the defendant makes a prima facie showing, the burden of *production* shifts to the plaintiff, which is an entirely different issue, and which burden may be satisfied by favorable inferences from the evidence, as well as issues of weight and credibility.[3] Therefore, once the movant makes out a prima facie affirmative defense, then under OCGA § 9-11-56 (e), the respondent must put up evidence to create an issue of fact or risk losing at summary judgment. When an affirmative defense is the basis for summary judgment, the burden does not shift under OCGA § 9-11-56 (e) until the defendant proves all elements of the affirmative defense, because such evidence does not pierce the complaint but instead establishes an affirmative defense as asserted in the answer.

2. I agree with the majority's opinion that Hartley's legal status

---

[3] All the plaintiff must do is create a disputed issue of material fact as to the affirmative defense. There is no duty to present evidence *disproving* the affirmative defense. See *Hodge v. SADA Enterprises*, supra at 691.

on Precision Tune's premises was that of a licensee. "A landowner is not an insurer of the safety of those who venture upon his land whether they are in trespasser, licensee or even invitee status. [Cit.]" *Wade v. Mitchell*, 206 Ga. App. 265, 267 (2) (c) (424 SE2d 810) (1992). However, different duties are owed by the landowner to individuals, depending on their legal status. "In comparing the status of the licensee with that of a mere trespasser this court has held [that in] the case of a licensee there is a slightly higher duty on the part of the owner or proprietor of the premises. He must not wantonly and wilfully injure the licensee; and since his presence as a result of his license is at all times probable, some care must be taken to anticipate his presence, and ordinary care and diligence must be used to prevent injuring him after his presence is known or reasonably should be anticipated. The fundamental concept in this class of cases, as in that of trespassers, is of a liability only for wilful or wanton injury; but it is usually wilful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be, or reasonably is expected to be, within the range of a dangerous act being done. *Barry v. Cantrell*, 150 Ga. App. 439, 440 (258 SE2d 61) [(1979)]. An owner owes to a licensee no duty as to the condition of the premises[,] save that he should not knowingly let him run upon a hidden peril or wilfully cause him harm. *Patterson v. Thomas*, 118 Ga. App. 326, 327 (163 SE2d 331) (1968). An owner or occupier is subject to liability to a licensee for injury caused by a condition on the property if the owner (a) knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to the licensee, and should expect the licensee will not realize the danger; and (b) fails to exercise reasonable care to make the condition safe, or to warn the licensee of the condition and risk involved, and (c) the licensee does not know or have reason to know of the condition and the risk. *Robinson v. Turner*, 164 Ga. App. 515, 516 (297 SE2d 522) [(1982)]. Of course, this rule is but a restatement of Restatement, Torts, 2d § 342. See *Sims v. Willoughby*, 179 Ga. App. 2, 3 (345 SE2d 626) [(1986)]. This Restatement rule is the basis for the legal liability of an owner or occupier because of his superior knowledge of the risk or danger, i.e.: The basis of the proprietor's liability is his superior knowledge and if his licensee knows of the condition or hazard there is no duty on the part of the proprietor to warn him and there is no liability for resulting injury because the licensee has as much knowledge as the proprietor does and then by voluntarily acting, in view of his knowledge, assumes the risks and dangers incident to the known condition. (Cits.) It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted. *Bunch v. Stanton*, 174 Ga. App. 233, 235 (329 SE2d 538) [(1985), overruled on other grounds, *Moon v. Homeowners' Assn. of*

*Sibley Forest*, 202 Ga. App. 821 (415 SE2d 654) (1992)]." (Punctuation omitted.) *Savage v. Flagler Co.*, 185 Ga. App. 334, 337-338 (2) (364 SE2d 52) (1987), rev'd on other grounds, 258 Ga. 335 (368 SE2d 504) (1988) (passive negligence without knowledge of licensee's presence). "An owner/occupier of premises has a duty to keep those premises safe for its invitees. An invitee enters upon the premises under an implied representation, or assurance, that the land has been prepared and made ready and safe for his reception. The invitee is entitled to expect the possessor will exercise reasonable care to make the land safe for his entry." (Citations and punctuation omitted.) *Jackson v. Camilla Trading Post*, 218 Ga. App. 164, 166 (460 SE2d 849) (1995).

There is no distinction between the duty owed to an invitee and a licensee by an owner or occupier of land when the licensee's presence is known to the owner/occupier of the premises and the owner/occupier's alleged negligence involves active negligence. *Lipham v. Federated Dept. Stores*, 263 Ga. 865 (440 SE2d 193) (1994); *Wade v. Mitchell*, supra. Under such circumstances and the facts of this case, Hartley would be owed the same duties as those owed to an invitee on the premises.

3. The majority's opinion urges that where the injury of which a plaintiff complains is caused by a condition of the premises that pre-dates the plaintiff's arrival on the premises, such acts could not support a claim of active negligence and cites *Lipham*, supra, and *Trammell v. Baird*, 262 Ga. 124 (413 SE2d 445) (1992), for such proposition. However, *Trammell v. Baird* stands only for the proposition that the owner/occupier of the premises owes no duty to warn a trespasser of the existence of a dangerous activity on the premises or of a hidden peril. "[W]here the alleged negligence arises from static or passive *conditions*, the landowner owes the anticipated trespasser a duty not to injure him wilfully or wantonly. [Cits.]" (Emphasis supplied.) Id. at 126. *Trammell v. Baird* clearly deals with the existence of a static condition that was not a mantrap; the owner/occupier of the premises has no duty to warn a trespasser of such condition. *Lipham* deals with the active negligence of an employee which is directed at a licensee on the premises. *Lipham* does not stand for the proposition that *all* negligence with respect to the premises or approaches referred to in OCGA § 51-3-1 is passive negligence.

Acts of an owner/occupier of the premises can *create* a dangerous condition on the premises. Such acts would constitute active negligence and do not become static just because the condition exists prior to the arrival of the invitee or licensee. Where the acts or omissions of the owner/occupier work positive injury to others, such acts or omissions are active negligence in the classic sense. See Smith & Prosser, Cases & Materials on Torts, p. 320 (1). Where the owner/occupier of

the premises either through malfeasance (commission of an act wrongful in itself), misfeasance (improper performance of an act), or non-feasance (the failure to perform an act) creates a reasonable, foreseeable danger to an invitee, then knowledge is presumed or imputed to the owner/occupier, because it is the tortfeasor's act or omission that created the danger or allowed the danger to continue unabated or without warning. *Lipham*, supra at 865; *Wade v. Mitchell*, supra at 266-267; *American Nat. Bank &c. v. Howard*, 117 Ga. App. 834 (161 SE2d 838) (1968).

In the case sub judice, Hartley testified that he slipped in new oil on the floor; new oil is not a "foreign" substance but is indigenous to a garage as part of the product, as well as waste by-product. Davidson and Moss testified that there was no oil on the floor, only rain water, which *is* a foreign substance brought into the premises. Neither Moss nor Davidson saw the substance on which Hartley slipped prior to his fall. The alleged presence of new oil on the repair bay floor is circumstantial evidence that the oil got there by the acts or omissions of appellee's employees as active negligence, because only they had possession and control over the area and the new oil. See *Foster v. Jones*, 64 Ga. App. 66, 67 (12 SE2d 141) (1940); see also *Wiley v. Winn Dixie Stores*, 204 Ga. App. 570, 572 (420 SE2d 20) (1992); *Mazur v. Food Giant*, 183 Ga. App. 453, 454 (359 SE2d 178) (1987); *Miscally v. Colonial Stores*, 68 Ga. App. 729, 732-733 (23 SE2d 860) (1943); see generally *Angel v. The Varsity*, 113 Ga. App. 507, 509 (148 SE2d 451) (1966).

In the case sub judice, appellee does not present any evidence to contradict the reasonable inference that the presence of the new oil was caused by appellee's employees. Instead, appellee presents evidence to dispute the presence of new oil; that, instead of new oil, the substance was merely rain water that had been tracked inside or had dripped off the car. This causes a material issue of fact for jury determination, i.e., was it new oil on the floor or was it merely a foreign substance, rain water? If the cause of the slip and fall was, in fact, a foreign substance, rain water, then appellant would be barred from recovery on the basis of equal knowledge with the owner/occupier. See *Colbert v. Piggly Wiggly Southern*, 175 Ga. App. 44 (332 SE2d 304) (1985).

*Alterman Foods*, supra at 623, is distinguishable on the law and facts from the case sub judice. In the case sub judice, there exists a factual issue as to active negligence, i.e., new oil on the floor, which is an indigenous substance under the appellee's control; in *Alterman Foods*, the alleged negligence was passive negligence in failing to discover and warn that the floor was slick or had been made slick by tracking rain water, a foreign substance, on the floor. In *Alterman Foods*, the holding was that the plaintiff did not know the cause of

her fall, which barred recovery, unlike the case sub judice, where the appellant unequivocally testified that new oil caused him to slip and fall. In the case sub judice, appellee's employee was aware of the appellant's actual presence, waved Marsh and appellant into the area of the alleged danger without making prior immediate inspection, and was in the immediate area of the alleged danger. Furthermore, the *Alterman Foods* two-pronged test has application only in foreign substance cases or negligent maintenance cases, which application is asserted only by appellee and not by appellant. Further, the two-pronged test was unnecessary for the holding in *Alterman Foods*; the Supreme Court held that the store owner was entitled to summary judgment as a matter of law where there has been no showing of negligence, because the plaintiff did not and could not point to the cause of her fall; therefore, the second prong is dicta, which was unnecessary to the Court's holding. Id. at 623-624.[4]

To recover, a plaintiff must show that he or she was without knowledge of the presence of the dangerous condition. See *Sears, Roebuck & Co. v. Reid*, 132 Ga. App. 136, 138 (207 SE2d 532) (1974). "A finding that the plaintiff is precluded from recovering in a slip and fall case because of [his] own equal or superior knowledge of the hazard is, in essence, a finding that plaintiff's own negligence preponderated in causing the injury. Cf. *Alterman Foods v. Ligon*, [supra at 623]. 'The trial court can conclude as a matter of law that the facts do or do not show negligence on the part of the defendant or the plaintiff only where the evidence is plain, palpable and undisputable.' *Ellington v. Tolar Constr. Co.*, 237 Ga. 235, 237 (II) (227 SE2d 336) (1976)." *Flood v. Camp Oil Co.*, 201 Ga. App. 451, 452 (411 SE2d 348) (1991).

"The customer must exercise ordinary care for his own safety, and must by the same degree of care avoid the effect of the merchant's negligence after it becomes apparent to him or in the exercise of ordinary care he should have learned of it. He must make use of all his senses in a reasonable measure amounting to ordinary care in discovering and avoiding those things that might cause hurt to him. *McGrew v. S. S. Kresge Co.*, 140 Ga. App. 149, 151 (230 SE2d 119) (1976); *King Hardware Co. v. Teplis*, 91 Ga. App. 13, 15 (84 SE2d 686) (1954). See also, *Stowe v. Gallant-Belk Co.*, 107 Ga. App. 80 (129 SE2d 196) (1962)." (Punctuation omitted.) *Alterman Foods v. Ligon*, supra at 623.

"However, a store patron is not bound to the same degree of care in discovering or apprehending danger in moments of stress or

---

[4] See, e.g., *Blake v. Kroger Co.*, 224 Ga. App. 140, 143 (480 SE2d 199) (1996), Birdsong, P. J., writing for the majority (five-year-old "rule" in *Mallory v. Piggly Wiggly Southern*, 200 Ga. App. 428 (408 SE2d 443) (1991), requiring a demonstration of compliance with cleaning and inspection procedures, is "dictum").

excitement or when his attention has been diverted. *Glover v. City Council of Augusta*, 83 Ga. App. 314, 316 (63 SE2d 422) (1951). Where a proprietor owes a duty to its invitees to keep the premises in a safe condition for their passage, the setting up of a distraction, by a sign or conduct, which will so divert the customer's attention as to be the proximate cause of his injury in [stepping in] what might otherwise be a patent and even safe appurtenance, may constitute actionable negligence on the part of the defendant. *Jackson Atlantic, Inc. v. Wright*, 129 Ga. App. 857, 859 (201 SE2d 634) (1973); *Gray v. Delta Air Lines*, 127 Ga. App. 45, 52 (192 SE2d 521) (1972)." (Punctuation omitted.) Id. at 623.

*Alterman Foods*, with its two-pronged test, set forth what a plaintiff must prove *at trial* to prevail before a *jury*, assuming that the defendant presents evidence to prove a prima facie defense of contributory negligence. Neither *Alterman Foods*, nor *Lau's Corp.*, changed contributory negligence or assumption of the risk from affirmative defenses that the *defendant* had the burden of proving at trial into an essential element of plaintiff's case. Further, *Alterman Foods* did not establish with its two-prong test a general new standard for *all* types of slip and fall cases on summary judgment. If on motion for summary judgment, the defendant attempts to prove an affirmative defense and demonstrates that the plaintiff failed to look and to see a danger that was open and obvious, then the defendant must go further and show that the plaintiff not only had the time, but also the opportunity, to avoid the danger in order to establish as a matter of law the bar of contributory negligence. To show that plaintiff should have seen the danger in the exercise of ordinary care raises merely the *negative* inference against the plaintiff that the plaintiff could have avoided the danger if the plaintiff had looked. While a jury may draw such negative inferences at trial, the trial court is not permitted to draw such negative inference against the plaintiff-respondent on motion for summary judgment. Under such circumstances, defendant has failed to carry the burden of proof of its affirmative defense and is not entitled to summary judgment unless it is able to pierce the allegations of plaintiff's complaint. See *Lau's Corp.*, supra at 491.

4. In this case, there are also other material issues of fact which exist for jury determination. Hartley knew he was entering an area where vehicles were serviced and maintained. Hartley admitted it was raining on the day in question. The question of whether or not Hartley was exercising ordinary care for his own safety when he exited the vehicle in the bay area, where there was a likelihood that oil or other fluids used in maintaining and repairing vehicles might be on the floor, is a question for the jury, especially under the circumstances here, where rain water from the cars could mix with sub-

stances already dried on the floor, causing the surface to be even more slippery than normal. A jury could determine that, by such behavior, Hartley either assumed the risk for his injuries or was comparatively negligent. Further, a jury question exists as to whether Hartley was comparatively negligent due to his alleged state of intoxication. A jury could also conclude that the alleged hazard of oil, or some other fluid, on the floor was greater than the general hazard perceived by Hartley, and that Hartley's knowledge of the hazard was not equal to that which the appellee had or should have had in the exercise of reasonable care. See *Flood v. Camp Oil Co.*, supra at 452. Material issues of fact also exist as to whether or not Hartley's view of the oil was blocked by the front of the car, and whether Hartley was distracted by an employee of appellee. While such material issues of fact exist, I must conclude that it was error for the trial court to grant appellee's motion for summary judgment.

DECIDED JULY 11, 1997 —
RECONSIDERATION DENIED JULY 29, 1997 — 

*Nelson & Lord, Ellis M. Nelson*, for appellants.
*Katz, Flatau, Popson & Boyer, Barbara S. Boyer*, for appellee.