## A95A0932. AXOM v. WENDY'S INTERNATIONAL, INC.

(466 SE2d 613)

MCMURRAY, Presiding Judge.

Vetrina Axom brought an action against Wendy's International, Inc., d/b/a Wendy's ("Wendy's") for damages she allegedly sustained when she slipped and fell in water at a Wendy's fast-food restaurant. Specifically, Axom alleges that the water was next to a salad bar at the Wendy's restaurant; that an employee of Wendy's was tending the salad bar at the time of the fall; that the "water [was] colorless [and was therefore] not observable to [her] before her fall . . ." and that Wendy's was "guilty of negligence . . . in failing to clean the spilled water up promptly and in failing to warn [her] of the presence of said water. . . ." Wendy's denied the material allegations of the complaint and filed a motion for summary judgment, arguing that Axom's admission that she could have seen the water had she been looking for it constitutes conclusive proof that Axom's own carelessness was the sole proximate cause of her alleged injuries.

On September 28, 1990, Axom drove with her son to a Wendy's fast-food restaurant (during the evening dinner hour) to pick up some supper. Upon entering the restaurant, Axom met an old high school friend, Laquita Nolley, and observed a Wendy's employee transferring various items (food and ice) between a cart and a nearby salad bar. After talking with her friend, Axom went to the restaurant's service counter, placed an order and informed the clerk that she would not be dining at the restaurant. Axom paid the cashier and, within a short period, her order was bagged, cupped and ready to go. Axom slung her purse on her arm and took her food bag in one hand and her drink with the other. She then headed for the service island for condiments, i.e., straws, catsup and napkins. On her way, Axom noticed that the Wendy's employee was still servicing the salad bar.

When Axom finished at the service island, she picked up her purse, food bag (now loaded with condiments) and drink, turned for the restaurant's exit and proceeded through a relatively narrow passage between the salad bar and the dining area. "As she passed [the table where her friend Laquita Nolley was sitting, Axom] smiled and her lips said goodbye." At that moment, Axom's skirt, food bag, drink

and purse sailed into the air and her body fell backward onto the restaurant's hard-surfaced floor. The salad bar attendant immediately "looked down[,] turned around and she said, are you all right, are you all right . . . let me go get the manager." Dazed and humiliated, Axom did not give a definitive answer. She only noticed (while sprawled on the deck) that the floor was wet and (a few moments later) that her skirt and underwear were soaked.

"The manager came and squatted beside [Axom and she] asked [him] what had happened[. He] told [Axom that she] had slipped on some water and fell. The manager [then] pulled out a dining room chair and helped [the injured patron], together with the assistance of the salad bar attendant, get seated in the chair. [Next, the] manager ordered the employee to get a mop and mop up the water and put out the wet floor sign." Axom (later) explained that she did not see anything unusual on the floor or around the base of the salad bar before her fall. However, she admitted (during a deposition) that "[i]f I had been just walking with my head down, you know, I guess I could have [seen that water]."

The trial court granted Wendy's motion for summary judgment. This appeal followed. *Held*:

To recover on summary judgment for a slip and fall due to a foreign substance on the floor, the circumstances must show (1) that the proprietor had actual or constructive knowledge of the hazard, and (2) that the plaintiff was without equal knowledge of the hazard. See *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327). In the case sub judice, Axom displayed her proof of "[c]onstructive knowledge . . . by showing that an employee of [Wendy's] was in the immediate area of the hazardous condition. . . . *Jester v. Ingles Market*, 206 Ga. App. 327, 328 (425 SE2d 323) (1992)." *Foodmax v. Terry*, 210 Ga. App. 511 (1) (436 SE2d 725).[1] In this regard, Axom testified that a Wendy's employee was attending the salad bar when she entered the restaurant; that the salad bar was in the immediate vicinity of her fall and that the salad bar attendant was squatting and scooping ice from the bottom of a food cart at the moment of the fall. This testimony, along with the corroborating affidavit of Laquita Nolley, would authorize a finding that Wendy's had constructive knowledge of the water hazard that purportedly caused Vetrina Axom's fall. See *Hardin v. Super Discount Market*, 205 Ga. App. 646, 647 (423 SE2d 18).

---

[1] Wendy's attempted to prove a lack of constructive knowledge by showing that a customary inspection and cleaning program was in place and had been complied with on the day of Axom's fall. See *Foodmax v. Terry*, 210 Ga. App. 511 (1), 512, supra. This evidence was compromised, however, via the affidavit of Laquita Nolley, who deposed that "[f]rom the time [she] entered the building which was well before 5:00 p.m. and until just before 6:00 p.m., when Vetrina left the building, [she] did not personally see the manager and assistant manager make any kind of inspection of the floor·area during that period of time."

Thus, the only question remaining is whether Axom had equal knowledge of the alleged water hazard, i.e., did she exercise ordinary care for her own safety?

"In *Barentine v. Kroger Co.*, 264 Ga. 224, 225 (443 SE2d 485) (1994), our Supreme Court held that the plaintiff's explanation as to why he was not looking where he was going as he approached the check-out counter, that being, that he was looking at the cashier to tell him he was ready to check out, created a fact issue for jury determination. 'This testimony is some evidence that Barentine exercised reasonable care for his own safety in approaching the check-out counter.' Id." *Sheriff's Best Buy v. Davis*, 215 Ga. App. 290, 291 (450 SE2d 319). In the case sub judice, Axom's proof would authorize a finding that she did not see the water hazard on the floor before her fall because it was transparent, because she was maneuvering through a busy dining area with her hands full of food, drink and a purse and because her attention was focused on making it to the exit and back to her car where her child had been waiting for 30 minutes. "If the facts of *Barentine* establish 'some evidence' that Barentine exercised reasonable care for his own safety, then clearly [Axom's assertions constitute] a much stronger case of such evidence." *Sheriff's Best Buy v. Davis*, 215 Ga. App. 290, 291, supra. Consequently, the trial court erred in granting summary judgment in favor of Wendy's. See *Grovner v. Winn Dixie Stores*, 218 Ga. App. 495 (462 SE2d 427). Also see *Van Dyke v. Emro Mtkg. Co.*, 211 Ga. App. 744 (440 SE2d 469), where this Court reversed summary judgment even though there was evidence that the plaintiff had prior knowledge of the hazard which allegedly caused his fall.

*Judgment reversed. Beasley, C. J., Pope, P. J., Blackburn and Ruffin, JJ., concur. Birdsong, P. J., Andrews, Johnson and Smith, JJ., dissent.*

ANDREWS, Judge, dissenting.

There is no evidence that either Wendy's or Axom had actual knowledge of the puddle of water on the floor. Assuming the presence of the Wendy's employee near the puddle of water created a question of fact as to whether Wendy's had constructive knowledge of the hazard, the dispositive issue is whether Axom also had constructive knowledge of the puddle of water.

Even if Wendy's had constructive knowledge, the defendant was still entitled to summary judgment in its favor if Axom should have discovered the puddle and avoided it, unless Wendy's prevented her from discovering it. *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980); *Smith v. Wal-Mart Stores*, 199 Ga. App. 808, 810 (406 SE2d 234) (1991). In other words, Axom is deemed to have constructive knowledge of the hazard if she should have discovered and

avoided it by the exercise of ordinary care but failed to do so.

In determining whether Axom should have discovered and avoided the puddle of water, the rule as set forth in *Alterman Foods*, supra, requires that she must "exercise ordinary care for [her] own safety, and must by the same degree of care avoid the effect of the [store's] negligence after it becomes apparent to [her] or in the exercise of ordinary care [she] should have learned of it. [She] must make use of all [her] senses in a reasonable measure amounting to ordinary care in discovering and avoiding those things that might cause hurt to [her]." (Citations and punctuation omitted.) *Alterman Foods*, supra at 623. In applying this rule, we have held on numerous occasions that "[s]ummary judgment is appropriate in situations where the hazardous condition was visible to the plaintiff, had the plaintiff looked." *J. H. Harvey Co. v. Kinchen*, 213 Ga. App. 868, 869 (446 SE2d 218) (1994); *Jester v. Ingles Market*, 206 Ga. App. 327, 329 (425 SE2d 323) (1992); *Winn Dixie Stores v. Carroll*, 212 Ga. App. 234 (441 SE2d 432) (1994); *Colevins v. Federated Dept. Stores*, 213 Ga. App. 49, 52 (443 SE2d 871) (1994); *Bruno's, Inc. v. Pendley*, 215 Ga. App. 108 (449 SE2d 637) (1994). Here, Axom admitted in her deposition that the puddle of water was not difficult to see and that if she had looked down she could have seen it.

In reversing the trial court's award of summary judgment in favor of Wendy's, the majority concludes there was evidence showing that Axom did not see the puddle of water "because it was transparent, because she was maneuvering through a busy dining area with her hands full of food, drink and a purse and because her attention was focused on making it to the exit and back to her car where her child had been waiting for 30 minutes." There is no support in the record for the conclusion that Axom did not or could not see the puddle because it was transparent. By her own admission, she did not see it because she did not look down at the floor. Axom did not claim she was prevented from discovering the puddle by any distraction created by Wendy's. The fact that she was walking with her food purchases back to her car is neither evidence of a distraction created by Wendy's nor evidence that she was exercising reasonable care for her own safety.

Because Axom admitted she could have seen the puddle had she looked, the evidence demands a finding that Axom's failure to exercise ordinary care for her own safety was the proximate cause of her injury. The trial court correctly granted summary judgment in favor of Wendy's.

I am authorized to state that Presiding Judge Birdsong joins in this dissent.

SMITH, Judge, dissenting.

While I dissent from the majority opinion, I write separately to point out the majority's misconstruction of the Georgia Supreme Court's opinion in *Barentine v. Kroger Co.*, 264 Ga. 224 (443 SE2d 485) (1994). See special concurrence in *Baker v. Winn Dixie Stores*, 219 Ga. App. 513 (465 SE2d 710) (1995).

I am authorized to state that Judge Johnson joins in this dissent.

## ON MOTION FOR RECONSIDERATION.

On motion for reconsideration, Wendy's contends we have misconstrued the Supreme Court's decision in *Barentine v. Kroger Co.*, 264 Ga. 224 (443 SE2d 485), as *Barentine* is limited to its facts because it is based upon a narrow offshoot of the distraction theory. The problem with this contention is that the Supreme Court of Georgia does not even mention the distraction theory in *Barentine*, instead relying on the specific circumstances of Barentine's fall in determining whether an average shopper, in the same or similar circumstances, should have been looking for and seen the hazard which allegedly caused Barentine to fall, i.e., that genuine issues of material fact remain as to whether "Barentine exercised reasonable care for his own safety in approaching the check-out counter. See *Food Giant [v. Cooke*, 186 Ga. App. 253, 257 (2) (366 SE2d 781)]." *Barentine v. Kroger Co.*, 264 Ga. 224, 225, supra. In the case sub judice, we follow this line of analysis by holding that, under the specific circumstances now presented on summary judgment, genuine issues of material fact remain as to whether the average fast-food restaurant patron, under the same or similar circumstances faced by Vetrina Axom at the time of her fall, should have been looking for and seen the hazard which allegedly caused Axom's fall. See Judge Blackburn's special concurrence in *McDonald's Restaurant &c. v. Banks*, 219 Ga. App. 667 (466 SE2d 240) (1995).

Next, Wendy's contends that this Court inaccurately conveys that the water hazard on the floor was "transparent," pointing out that Vetrina Axom did not testify (in her deposition) that the water hazard was "transparent" and that she only alleged in her complaint that the water she slipped in was "colorless." In the case sub judice, Wendy's had the burden, as the moving party on summary judgment, to pierce Axom's claim that the water hazard was "colorless." Wendy's, however, did not seek to pierce this allegation by questioning Axom (during her deposition) about the specific coloration of the allegedly "colorless" water. Accordingly, since an appellate court is bound to construe the evidence with every reasonable inference and presumption in favor of the non-moving party's claims, *Padgett v. M & M Super Market*, 195 Ga. App. 799, 800 (395 SE2d 245), we stand

by our characterization that the allegedly "colorless" water hazard was "transparent." In other words, we cannot say that Vetrina Axom's testimony that she could have seen the water hazard had she been looking down (over her purse and the food bag and drink she had just purchased from Wendy's) negates our statement that the allegedly "colorless" water was "transparent."

*Motion for reconsideration denied.*

DECIDED DECEMBER 4, 1995 —
RECONSIDERATION DENIED DECEMBER 20, 1995 —

*Bush, Crowley, Leverett & Leggett, Michelle L. Schieber, Charles R. Free,* for appellant.

*Jones, Cork & Miller, Carr G. Dodson, H. J. Strickland, Jr., W. Kerry Howell, Shawn M. Story,* for appellee.