A96A1097. HORNBUCKLE WHOLESALE FLORIST OF MACON, INC. v. CASTELLAW.

(477 SE2d 348)

RUFFIN, Judge.

This is a foreign substance slip and fall case. Eleanor Castellaw was shopping in a retail store operated by Hornbuckle Wholesale Florist of Macon, Inc. ("Hornbuckle") when she slipped and fell on what she claimed was a box top. Hornbuckle appeals the trial court's order denying its motion for summary judgment. We reverse.

Summary judgment is appropriate when the court, viewing all the evidence and drawing all reasonable inferences in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Viewed in that light, the record shows the following: Castellaw went to Hornbuckle, a florist store, to purchase some brass containers. As a regular customer, she knew where the brass containers were displayed and proceeded directly to that aisle. On this occasion, she noticed that cardboard boxes were stacked in a row on the left side of the aisle. The floor was made of concrete, and Castellaw did not notice any hazard on the floor as she walked down the aisle to the brass containers.

Ella Crawford, the store employee who assisted Castellaw with her selections, retrieved some brass containers from a storage area and placed them on top of some of the stacked boxes for Castellaw to inspect. As she considered the various containers, Castellaw removed her jacket, walked about ten feet down the aisle past the stacked boxes and placed her jacket on top of a box. She admits nothing prevented her from noticing objects on the floor. As she started to return to the containers, Castellaw slipped and fell on what she claimed was a box top. She had not noticed the box top on the floor and stated by affidavit that the top was not noticeable because it was small and camouflaged by the color and surrounding boxes and flooring. However, Castellaw admitted in her deposition that she could tell the difference between the texture of the floor and the texture of the cardboard boxes and that if she had looked down, she certainly could tell the difference between the concrete floor and the cardboard boxes. Castellaw suggests that the box top apparently protruded a few inches from a gap between the row of boxes. Castellaw was unaware of Crawford's whereabouts when she fell, but claimed that Crawford assisted her and retrieved the box top.

Crawford testified she never saw a box top on the floor in the area where Castellaw fell. She further testified that she was responsible for sweeping the floor and maintaining a lookout for foreign substances on the floor. According to Crawford, she had inspected the aisle where Castellaw fell only five to ten minutes before Castellaw

entered the store, and no box top or other foreign object was on the floor at that time.

It is axiomatic that the liability for a slip and fall depends upon the superior knowledge of the defendant. To state a cause of action, the plaintiff must show (1) that the defendant had actual or constructive knowledge of the foreign substance *and* (2) that the plaintiff had no knowledge of it or was prevented from discovering it for some reason attributable to the defendant. *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980). "[I]f [Castellaw] is unable to prove either element of the *Alterman* test, a failure of proof results. [Cit.]" *Winn Dixie Stores v. Carroll*, 212 Ga. App. 234 (441 SE2d 432) (1994). Castellaw has presented no evidence contradicting Hornbuckle's evidence that it had no actual knowledge of the existence of the box top on its floor. Thus, the issue presented in this case is whether Hornbuckle had constructive knowledge of the allegedly hazardous condition.

Constructive knowledge can be established with evidence that either Hornbuckle failed to exercise reasonable care in inspecting its premises or an employee was in the immediate vicinity of the hazardous condition and could easily have noticed and corrected it. *Drake v. Kroger Co.*, 213 Ga. App. 72, 73 (1) (443 SE2d 698) (1994). In this case, Castellaw cannot establish that Hornbuckle failed to exercise reasonable care in inspecting the area because the evidence showed that Hornbuckle inspected the floor approximately five to ten minutes prior to Castellaw entering the store. Id. See also *Butler v. Lanier Park Regional Hosp.*, 220 Ga. App. 386 (469 SE2d 475) (1996). In addition, Castellaw failed to show constructive knowledge based on a negligent inspection of the premises because there was no evidence regarding the length of time the foreign object, if any, was permitted to remain on the floor. See *Ballard v. Southern Regional Med. Center*, 216 Ga. App. 96 (1) (453 SE2d 123) (1995). "To sustain [a] cause of action under this first kind of case it is necessary that [Castellaw] prove a period of time the dangerous condition ha[d] been allowed to exist. Without such proof it would not be possible to determine whether [Hornbuckle] had been afforded a reasonable time within which to inspect and remove the hazard." (Citation and punctuation omitted.) *Drake*, supra at 73.

Nor does the evidence support the theory that a Hornbuckle employee was in the immediate vicinity of the fall and could easily have noticed the box top and removed it. Castellaw has presented no evidence to show that a Hornbuckle employee was in a position to see or remove the box top from the floor. According to Crawford, she swept the area of the fall approximately five to ten minutes before Castellaw entered the store, and she did not see any box top before the fall. Moreover, accepting Castellaw's testimony that the box top

was not noticeable because of its size, location and color, it must logically follow that a Hornbuckle employee could not have easily discovered the "hazard" and removed it. *Butler*, supra; *Drake*, supra. There is no evidence in the record that a Hornbuckle employee could have easily noticed the box top and removed it since Castellaw testified it was hidden from sight.

Contrary to Castellaw's argument, the distraction theory does not preclude summary judgment in this case. The distraction theory applies to the second prong of the *Alterman* test to prevent summary judgment to a defendant when a plaintiff could have easily seen the hazard yet failed to exercise ordinary care for her own safety. *Barentine v. Kroger Co.*, 264 Ga. 224 (443 SE2d 485) (1994). It does not apply to the first prong of the *Alterman* test, where the issue is the proprietor's knowledge of the existence of the allegedly hazardous condition. Likewise, any discrepancies between the testimony of Crawford and Castellaw do not preclude summary judgment in this case since these alleged discrepancies do not create "material" issues of fact. OCGA § 9-11-56. Whether the box top was on the floor after the fall and whether Castellaw actually purchased brass containers after the fall do not alter the fact that Hornbuckle had no actual or constructive knowledge of the box top *before* Castellaw's fall.

Since Castellaw failed to present evidence of the first prong of the *Alterman* test, showing Hornbuckle had actual or constructive knowledge of the allegedly hazardous condition, the trial court erred in failing to grant summary judgment to Hornbuckle.

*Judgment reversed. Beasley, C. J., Birdsong, P. J., Pope, P. J., Andrews, Johnson, Blackburn and Smith, JJ., concur. McMurray, P. J., dissents.*

MCMURRAY, Presiding Judge, dissenting.

I respectfully dissent from the judgment of reversal, effectively granting summary judgment to the defendant-proprietor Hornbuckle Wholesale Florist of Macon, Inc. in plaintiff-invitee Eleanor Castellaw's "trip-and-fall" tort action to recover for personal injuries sustained allegedly as a result of defendant's failure to exercise ordinary care to keep its premises safe as required by OCGA § 51-3-1. In my view, the trial court correctly determined that a jury should decide whether plaintiff failed to exercise ordinary care for her own safety by failing to observe a silk flowers' box lid on the floor while she was looking at the brass items defendant's employee presented for plaintiff's inspection and, if so, whether the plaintiff's contributory negligence completely bars or merely diminishes any recovery under the Georgia law of comparative negligence, OCGA § 51-11-7.

Viewed in the light most favorable to plaintiff as the non-movant, her affidavit testimony authorizes a jury finding that boxes

of varying sizes were stacked at varying heights in front of the shelves in the aisle where plaintiff fell. She was "paying attention to where [she] was walking, [. . . and] did not notice any foreign material on the floor before [her]. . . ." Plaintiff's "attention was directed towards the brass articles which [defendant's sales employee] Ms. Crawford had stacked on top of the boxes [for plaintiff's inspection]. [Plaintiff] had taken no more than a couple of steps when [her] right foot stepped on a piece of cardboard which had been left on the floor and was protruding slightly from the edge of the box stacked there on the floor. [Her] feet went out from under [her]. . . . Ms. Crawford helped [her] to [her] feet, and then picked up the cardboard box lid on which [plaintiff] had slipped." This cardboard box lid "was not noticeable because it was small and camouflaged by the color and surrounding boxes and flooring. It was dimly lit in this area, as is the entire store, and the floor did not look clean. . . . Although the store floor is concrete, it is very dirty and is therefore brown in color. [I]f asked to look at the concrete and the box lid side-by-side, [plaintiff] would be able to tell the difference between them. However, through casual observation the lid was not readily visible." At her deposition, plaintiff testified that on the day of her fall, she was wearing shoes "[s]imilar to a nurse's shoe, a thick soled rubber with a non-skid bottom." She walked to the area of defendant's store where brass was displayed. "Ella [Crawford] came up and stopped at the brass. 'Cause [plaintiff] told [Ms. Crawford] what she would like." Plaintiff affirmed that there was "nothing to prevent [her] from looking down at the floor to see if it's clear and if there's any debris or foreign object on it[.]" As plaintiff approached the area where she fell, she "was looking at the brass [items that defendant's employee had displayed for plaintiff] on top of the boxes [in the aisle]." Ms. Crawford "had brass sitting on top of the boxes like a counter and [plaintiff] put [her] bag down and . . . [her] jacket, and started [walking] this way. And [that] is when [she] fell." "After [plaintiff] fell and Ella [Crawford] picked [plaintiff] up, [plaintiff] saw [Ms. Crawford] pick up a box lid and put it on top of the boxes that were stacked." This lid was "like you would get [with] silk flowers . . . silk flowers in boxes . . . maybe 36 inches long [. . . and about] three inches . . ." deep. "And the box lid that [Ms. Crawford] picked up was beside these boxes, just apparently sticking out just a little bit right there, same color of the floor, same color of the boxes. And that's what [plaintiff] slipped on. [Plaintiff] did not know that . . . until [Ms. Crawford] picked it up and laid it on top of the boxes." As plaintiff stepped on the box lid, she "didn't have any traction. . . ." When asked if anything prevented her from seeing the box lid, had she looked, plaintiff replied: "I was looking at the brass that Ella [Crawford] had put up on top of the boxes as I was walking from [where I] left my pocketbook, . . .

towards there." The question was repeated, and plaintiff explained: "It was the same color of the boxes and the . . . floor, basically." Plaintiff did concede that "if I'd seen it, I'd have known . . . it was not part of the concrete floor, but it was apparently sticking right out just from the edges of the other one, just enough for me to catch it and fall. . . ." Plaintiff had been in the store 15 or 20 minutes before she fell, during which time, Ella Crawford "had been up to the storage or went to the warehouse twice[, . . . to] bring back some different kinds of brass containers for [plaintiff] to see and look at. . . ." Plaintiff further affirmed defense counsel's assertion that "It must have been there at that time . . . [b]ut [she] did not see it."

Ella Crawford testified at her deposition that it was her responsibility to "[t]ake the pricing gun and open the box [of bunched silk flowers] up and price them, put them back in and put the top back on." Ella Crawford and Betty Heath "always price them, all the boxes first, and then we put them out." They had finished pricing "[t]he day before [plaintiff fell]." Ella Crawford also swept the concrete floor "[e]very day[, . . .] first thing in the morning[, . . . and does not] sweep it again after that[.]" She affirmed that "either [she] sweep[s] it, or it doesn't get swept[.]" Ella Crawford further affirmed that plaintiff "was looking at me," when she entered defendant's store. Ella Crawford "moved the first box, and [she] slid it down this aisle right here. At that time, [plaintiff] came around [Ella Crawford], around this way, and she fell right there in that little hole." Plaintiff had taken only two steps.

This evidence clearly authorizes two crucial inferences favorable to plaintiff, establishing defendant's constructive knowledge: First, either Ella Crawford or Betty Heath negligently placed or dropped the box lid on the floor while pricing on the *evening before* plaintiff fell. Their knowledge and their negligence is attributable to their employer, defendant Hornbuckle Wholesale Florist of Macon, Inc. The second favorable inference is that Ella Crawford did not sweep in that particular aisle the next morning where she would have had to move a series of heavy boxes, or, that if she did so, she *failed to observe or remove* the box lid from the floor. Thus, the offending silk flowers' box lid, having spent the night and the entire morning on the floor hidden behind large boxes, was *not readily discernible* even to Ella Crawford, if in fact she diligently performed her sweeping on the morning that plaintiff fell. Added to this is plaintiff's own testimony that the box lid blended in color with the dirty concrete floor, creating an optical illusion. Also present is the natural response of a patron who is implicitly invited to step into the aisle by the actions of the employee in clearing the way for plaintiff to inspect the brass she came to purchase. "Where a proprietor owes a duty to its invitees to keep the premises in a safe condition for their passage, the setting up

of a distraction, by a sign or *conduct*, which will so divert the customer's attention as to be the proximate cause of his injury in colliding with what might otherwise be a patent and even safe appurtenance, may constitute actionable negligence on the part of the defendant." (Citations and punctuation omitted; emphasis in original.) *J. H. Harvey Co. v. Edwards*, 219 Ga. App. 697, 698 (466 SE2d 246) (whole court).

Nor can we say, as a matter of law applied to undisputed fact, that plaintiff failed to exercise ordinary care for her own safety to avoid the consequences of a known peril created by defendant's negligence. Compare *Altermans Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327); *Lindsey v. J. H. Harvey Co.*, 213 Ga. App. 659 (445 SE2d 810); OCGA § 51-11-7. In my view, the evidentiary posture of the case sub judice brings it within the ambit of the recent ruling of the Supreme Court of Georgia in *Barentine v. Kroger Co.*, 264 Ga. 224 (443 SE2d 485). There, as here, the plaintiff offered a specific reason for not looking at the floor or watching her feet as she approached the spot where she fell. In fact, in the case sub judice, plaintiff has three specific reasons: The lid was partially hidden, it blended in color with the dirty floor, and she was concentrating on the brass that defendant's employee had just displayed to plaintiff. " 'This testimony is some evidence that [plaintiff] exercised reasonable care for [her] own safety in approaching the [brass items displayed for her by defendant's employee, Ella Crawford].' [Cit.] In the subject case, the store employee spoke to [plaintiff and placed two brass items on the row of boxes for plaintiff to inspect], while in *Barentine*, there was no communication [or distraction] generated by the store employee, [who] was simply the focus of Barentine's attention. If the facts of *Barentine* establish 'some evidence' that [plaintiff] exercised reasonable care for [her] own safety, then clearly [the circumstances in the case sub judice constitute] a much stronger case of such evidence." *Sheriff's Best Buy v. Davis*, 215 Ga. App. 290, 291 (450 SE2d 319). Accord *J. H. Harvey Co. v. Edwards*, 219 Ga. App. 697, 698, supra; *Axom v. Wendy's Intl.*, 219 Ga. App. 623, 625 (466 SE2d 613) (whole court). This is especially so since, in *Barentine*, the Supreme Court of Georgia recognized that application of the contradictory testimony rule of *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) bound plaintiff Barentine to his unfavorable deposition testimony that he could have seen the clear liquid if he had been looking down towards it as he walked to the check-out counter. *Barentine v. Kroger Co.*, 264 Ga. 224, 225, supra.

Pursuant to Art. VI, Sec. VI, Par. VI, Ga. Const. (1983), "The decisions of the Supreme Court shall bind all other courts as precedents." My colleagues in the majority may not agree with the analysis of the Supreme Court of Georgia in the *Barentine* decision but

they are duty bound to follow it where it applies. Since, in my view, the trial court correctly denied defendant's motion for summary judgment, I respectfully dissent from this Court's reversal of that correct decision.

DECIDED OCTOBER 15, 1996 —

*Jones, Cork & Miller, Rufus D. Sams III, Wendell K. Howell,* for appellant.

*Sell & Melton, Russell M. Boston, Berlon & Timmel, James T. Perry,* for appellee.