## A97A1395. BRUNO'S FOOD STORES, INC. v. TAYLOR.
### (491 SE2d 881)

ELDRIDGE, Judge.

Appellee Patricia Lucille Taylor brought suit against appellant Bruno's Food Stores, Inc. d/b/a FoodMax ("FoodMax") for actual damages, contending that FoodMax was actively negligent in allowing or causing its floor to be wet and by failing to post proper warning signs to alert its patrons, including appellee, of the danger.

The facts of the case sub judice show that appellee entered FoodMax in Tifton, Georgia at approximately 10:30 p.m. on May 4, 1994, to buy groceries and other items. After appellee obtained a shopping buggy, she proceeded toward the direction of the meat department. Appellee was paying attention to where she was going; however, when she reached the floral area and started to turn left, as she was pushing her buggy into the intersecting aisle, she took the opportunity to look at the plants as she "rolled by." Appellee testified that she was walking normally when her right foot slipped. Appellee hit her left knee on the floor and then went down on her other knee as she continued to hold onto the buggy. Appellee did not let go of the shopping buggy until she stood up. At the time of appellee's slip and fall, she was wearing slacks and Reebok tennis shoes.

Appellee did not see any moisture on the floor prior to her fall. However, after appellee stood up, she noticed that both of her pant legs were damp. Appellee then carefully examined the floor in the area of her fall and discovered a strip of damp surface about six inches in width and approximately three to five feet in length, which extended into the area where she had fallen. Appellee did not observe any standing water, but could now see a difference in the sheen on the floor where it was damp. After her fall, appellee noticed that the floor was being cleaned by a man in the produce department, which was in a separate department from where she had fallen. It is uncontroverted that, at the time of appellee's fall, FoodMax's floor was being cleaned by an employee of United Floor Maintenance Company ("United Maintenance").

FoodMax appealed from the trial court's order denying its motion for summary judgment and, in three enumerations of error, alleges

that appellee failed to meet her burden of proof as established in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991), by presenting sufficient evidence to make out both elements of a prima facie slip and fall case as set forth in *Alterman Foods v. Ligon*, 246 Ga. 620 (272 SE2d 327) (1980), i.e., that there is no evidence in the record by which appellee could show that appellant had actual or constructive knowledge of the foreign substance or the hazard which allegedly caused her to fall, as the only person in the area, besides appellee, was not an employee of appellant but, rather, was an individual employed by an independent floor care company; that there is no evidence to which appellee could point that would show how long the alleged hazard existed prior to her fall; and that the evidence established that appellee failed to exercise ordinary care for her own safety.

The foreign substance analysis set forth in *Alterman Foods* is not appropriate in this case. Even if such foreign substance analysis was not mere dicta, see *Alterman Foods*, supra at 622, such analysis would not apply in the case sub judice, because the slip and fall was caused by a liquid cleaning compound intentionally placed on the floor, not by a foreign substance. Id. at 623-624. Therefore, this Court will treat appellant's enumerations of error as a failure of appellee to meet her burden of proof as established in *Lau's Corp. v. Haskins*, supra.

On a motion for summary judgment under OCGA § 9-11-56, the defendant, as the moving party, may prevail by "piercing the plaintiff's pleadings," i.e., demonstrating that the plaintiff will be unable to prevail at trial, even when all doubts are resolved in favor of the plaintiff, because there is no issue of material fact as to at least one essential element of the plaintiff's prima facie case. OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, supra; *Greenforest Baptist Church v. Shropshire*, 221 Ga. App. 465 (471 SE2d 547) (1996); *Crosson v. Lancaster*, 207 Ga. App. 404 (427 SE2d 864) (1993). The defendant, who will not bear the burden of proof at trial, may accomplish this either (1) by presenting evidence which negates an essential element of the plaintiff's claim, i.e., affirmatively disproving the element with evidence which makes it *impossible* for the plaintiff to prove the element at trial, or (2) by showing "an absence of evidence to support the [plaintiff's] case" as to any essential element. *Lau's Corp.*, supra at 491, 495; see, e.g., *Caven v. Warehouse Home Furnishings Distrib.*, 209 Ga. App. 706, 707 (434 SE2d 532) (1993). However, a defendant may not prevail simply by presenting contradictory evidence, as such evidence serves only to create an issue for jury resolution. *Davis v. Piedmont Hosp.*, 222 Ga. App. 97 (473 SE2d 531) (1996); *Service Merchandise v. Jackson*, 221 Ga. App. 897 (473 SE2d 209) (1996). Further, all reasonable inferences from the evidence presented must be

given in favor of the plaintiff, as the nonmoving party; a trial court is precluded from drawing negative inferences against the plaintiff from evidence presented by a defendant on a motion for summary judgment.[1] See *Lau's Corp.*, supra; *Millar Elevator Svc. Co. v. O'Shields*, 222 Ga. App. 456 (475 SE2d 188) (1996); *Service Merchandise*, supra; *Harvey v. McLaughlin*, 198 Ga. App. 105 (400 SE2d 635) (1990); *Holland v. Sanfax Corp.*, supra at 5. If the defendant is able to pierce the plaintiff's pleadings by showing that no jury issue exists as to an essential element of the plaintiff's claim, the burden of *production* shifts to the plaintiff, i.e., the plaintiff will survive summary judgment by presenting *any* evidence which establishes a jury issue regarding that element. See OCGA § 9-11-56 (e); *Lau's Corp.*, supra. Even slight evidence will be sufficient to satisfy the plaintiff's burden of production on a motion for summary judgment; such evidence may include favorable inferences drawn by the court from the evidence presented.[2] See *Stuckey Diamonds v. Jones*, 195 Ga. App. 351 (393 SE2d 706) (1990); *Mealer v. Gen. Cinema Beverages of Ga.*, 190 Ga. App. 419 (379 SE2d 192) (1989). Further, the plaintiff is not required "to respond to issues which are not raised in the motion for summary judgment or to present [her] entire case on all allegations in the complaint." *Hodge v. SADA Enterprises*, 217 Ga. App. 688, 690 (458 SE2d 876) (1995). Therefore, under *Lau's Corp.*, supra, the defendant is entitled to summary judgment if it is able to pierce the plaintiff's pleadings as to any material element and the plaintiff is unable to respond with any evidence to create a jury issue as to that element.

However, even if a defendant is unable to pierce the plaintiff's pleadings, it may still prevail at summary judgment by presenting evidence which establishes a prima facie affirmative defense. In so doing, the defendant, as the moving party seeking summary judgment, may not rely on inferences from the evidence presented, as all inferences must be drawn in favor of the plaintiff, as the nonmoving party. Once the defendant satisfies its burden of proof by presenting evidence to support each element of the affirmative defense, the burden of production of some evidence shifts to the plaintiff, who will survive summary judgment by presenting *any* evidence which cre-

---

[1] In the case sub judice, favorable inferences may be drawn by the trial court on behalf of the plaintiff/nonmoving party, since the granting of a motion for summary judgment deprives the non-moving party of his right to a trial by a jury contrary to the Constitutions of the State of Georgia and of the United States. Ga. Const. of 1983, Art. I, Sec. I, Par. XI; U. S. Const., Amend. VII. "[T]he trial court must give [the plaintiff/nonmoving party] the benefit of all favorable inferences that may be drawn from the evidence. [Cits.] The act cannot deprive a party of the opportunity to have a trial of a genuine issue as to any material fact." *Holland v. Sanfax Corp.*, 106 Ga. App. 1, 5 (126 SE2d 442) (1962).

[2] However, " '[a]n inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility.' [Cit.]" *Edwards v. Campbell Taggart Baking Co.*, 219 Ga. App. 806, 807 (466 SE2d 911) (1996).

ates a disputed material issue of fact for the jury to decide as to an element of the affirmative defense. See *Barentine v. Kroger Co.*, 264 Ga. 224, 225 (443 SE2d 485) (1994); *Lau's Corp.*, supra; *Hornbuckle Wholesale Florist &c. v. Castellaw*, 223 Ga. App. 198, 200 (477 SE2d 348) (1996) (McMurray, P. J., dissenting); *J. H. Harvey Co. v. Edwards*, 219 Ga. App. 697, 698 (466 SE2d 246) (1995); *Sheriff's Best Buy v. Davis*, 215 Ga. App. 290, 291 (450 SE2d 319) (1994). However, if the plaintiff is unable to meet this requirement to produce evidence, the defendant is entitled to summary judgment as a matter of law. With this analysis in mind, we now turn to the evidence before the trial court.

1. "An owner of premises, as to invitees, owes a duty to exercise ordinary care for their protection to keep the premises safe, not *reasonably* safe. A business invitor owes a nondelegable duty to protect [its] invitees from injury. Thus, [one] dispositive issue in the case sub judice is whether there is any evidence which would authorize a jury to find that [FoodMax] had not delivered full possession and complete control of [its floors to United Maintenance] and if full possession and complete control were not delivered, whether [appellee] was injured as a result of a breach of the nondelegable duty owed to [her] as an invitee [to the store] that [FoodMax] controlled." (Citations and punctuation omitted.) *Towles v. Cox*, 181 Ga. App. 194, 196 (1) (351 SE2d 718) (1986). In short, the owner/occupier cannot insulate itself from liability simply by hiring an independent contractor to clean its floors and, under the facts of this case, may be vicariously liable for the negligent acts of its contractor.

At the time of appellee's fall, appellant had actual knowledge that the floors of its store were being cleaned by an employee of United Maintenance. FoodMax was open 24 hours a day for its customers to shop and had hired United Maintenance to clean the floor nightly between the approximate hours of 11:00 p.m. and 8:00 a.m. At the direction of FoodMax, the portion of the store in which the floor was being cleaned was not closed to customers. This decision benefited FoodMax, as customers could shop in the entire store. FoodMax simply instructed United Maintenance to start its work in the area of least traffic. Therefore, full possession and control of the floor had not been delivered to United Maintenance, and the floor was jointly occupied by both United Maintenance and FoodMax, making FoodMax vicariously liable for the negligent acts of its contractor. See *Feggans v. Kroger Co.*, 223 Ga. App. 47 (476 SE2d 822) (1996). Because FoodMax had not relinquished full possession and control of the floor and had authorized the application of the cleaning compound, FoodMax would be presumed to have knowledge of the existence of the moisture on the floor. The knowledge and conduct of United Maintenance are imputed to FoodMax.

2. At the time of appellee's fall, United Maintenance was using a Vance scrubbing machine, which was owned, maintained, and provided by FoodMax. FoodMax was aware that the scrubbing machine left a streak of water on the floor, as the machine did not remove all the fluid it applied to the floor. Linda Harris, who was employed by FoodMax, testified that the Vance floor scrubber cleaned in streaks; that it dispensed the cleaning solution and then vacuumed up the fluid; and that the machine left a streak of water approximately an inch wide, which had to be mopped up using a hand mop. Such testimony that the machine left a streak of water could indicate that the machine was not in proper repair. Linda Harris further testified that when she came to appellee's aid, "some water" was on the floor where appellee had fallen. This evidence raises issues of acts and omissions on the part of FoodMax as to its own active negligence, separate and apart from any imputed negligence.

Further, FoodMax provided yellow "wet floor" signs to United Maintenance for its use. It is uncontroverted that no yellow "wet floor" signs had been placed within the store to warn the patrons of the danger of the wet floor on the night that appellee fell, although such signs were readily available. FoodMax provided shopping buggies for the use of its patrons and should have been aware that such shopping buggies would block the patron's view of the floor directly in front of the buggy. Therefore, there was a greater duty placed on FoodMax to place out warning cones or signs; this duty was particularly applicable because appellant knew that the floor was being cleaned and that its scrubbing machine left fluid on the floor that had to be removed by hand. Under the facts of this case, as outlined above, the failure to put out the warning signs or to ensure that United Maintenance put out warning signs would be active negligence.

Acts or omissions of an owner/occupier of the premises can create a dangerous condition on the premises; such acts or omissions constitute active negligence and do not become static just because the condition pre-exists the arrival of the invitee. Where acts or omissions of the owner/occupier work positive injury to others, such acts or omissions are active negligence in the classic sense. See Smith & Prosser, Cases & Materials on Torts, p. 320 (1). Such acts or omissions by FoodMax of providing a scrubbing machine for United Maintenance's use that left a streak of water on the floor and which may not have been in proper repair, failing to make sure the streak of water was promptly and properly removed from the floor, along with the failure to make sure the yellow "wet floor" signs were properly placed on the floor, together, would constitute active negligence. See *Lipham v. Federated Dept. Stores*, 263 Ga. 865 (440 SE2d 193) (1994) (employee unintentionally knocking down plaintiff was active negligence);

*Greenforest Baptist Church v. Shropshire*, supra (allowing church members to come onto church property and discard two-by-fours into the work area of the plaintiff is active negligence); *Wade v. Mitchell*, 206 Ga. App. 265 (424 SE2d 810) (1992) (employee inflating a tire, which explodes in an open area, was active negligence); *Ga. Power Co. v. Deese*, 78 Ga. App. 704, 707 (51 SE2d 724) (1949) (releasing water from dam was active negligence); *Clinton v. Gunn-Willis Lumber Co.*, 77 Ga. App. 643 (49 SE2d 143) (1948) (accumulating large sawdust pile near power lines was active negligence).

Where the owner/occupier of the premises through malfeasance (commission of an act wrongful in itself), misfeasance (improper performance of an act), or nonfeasance (the failure to perform an act) creates a reasonably foreseeable danger to an invitee, then knowledge is presumed or imputed to the owner/occupier, because it is the tortfeasor's act or omission that created the danger or allowed the danger to continue unabated or without warning. *Lipham v. Federated Dept. Stores*, supra; *Wade v. Mitchell*, supra; *American Nat. Bank of Brunswick v. Howard*, 117 Ga. App. 834 (161 SE2d 838) (1968). Clearly, the evidence was sufficient to show material issues of fact exist as to whether FoodMax was actively negligent in failing to exercise ordinary care for appellee's safety.

3. Further, there was a complete failure on the part of FoodMax to establish the condition of the floor at the time of appellee's fall, so that there was no evidence to show that appellee should have noticed and could have avoided the hazard. See *Mallory v. Piggly Wiggly Southern*, 200 Ga. App. 428, 430 (408 SE2d 443) (1991). Linda Harris testified generally about the amount of water which previously had been left behind by the scrubbing machine and testified that such amount of water was visible. However, this testimony was not specifically directed as to the date, time, and location of appellee's fall, such as to show that appellee should have observed the damp area on the floor. Such testimony was simply a general description as to the usual condition of the floor while it was being cleaned. This testimony failed to show that a customer pushing a shopping buggy could see the narrow strip of sheen on the floor in the location of appellee's fall. Linda Harris described the streak of water that was usually left by the machine as being approximately one inch in width, which varied from appellee's description of the damp sheen that she observed after her fall, which was approximately six inches wide. The only testimony that Linda Harris gave that was specific to the date, time, and location of appellee's fall was that "a little bit" of water was on the floor. Further, her testimony did not show what could have been seen by appellee as she proceeded down the aisle with a shopping buggy in front of her; the evidence failed to show not only that appellee should have seen the moisture but would have had suffi-

cient opportunity to avoid the danger.

"[T]he evidence does not conclusively show a failure of [appellee] to exercise ordinary care for [her] own safety. [Appellee's] testimony that [she] was not looking directly at the floor at the time [she] fell because [she] was [looking at a display of plants] does not alone show [she] was not exercising ordinary care. Looking continuously, without intermission, for defects in a floor is not required in all circumstances. What is a reasonable lookout depends on all the circumstances at the time and place. While we have held that a plaintiff fails to exercise ordinary care when she admits she could have seen the [moisture] on the floor had she been looking, no such admission is present in this case." (Citations and punctuation omitted.) *Chaves v. Kroger*, 213 Ga. App. 348, 350-351 (444 SE2d 606) (1994). Further, there is no evidence in the record that shows that, if appellee had seen the narrow strip of sheen on the floor immediately prior to her fall, she could have avoided it. Appellee simply testified that she was looking where she was going when she entered the store; that at the time of her fall, she was not focused on the floor but was turning into a different aisle and was looking at a display of plants; that she did not see anything on the floor that would indicate that it was damp prior to her fall; that she did not let go of the shopping buggy until after she stood back up; that it was only after discovering that both her pant legs were wet, that she stepped back from the buggy, looked down, and was able to see a narrow strip of sheen on the floor, which was approximately six inches wide and between three and five feet in length; and that she saw no signs or cones to alert her to a danger of which her individual senses might have inadequately provided her with notice. It was reasonably foreseeable to FoodMax that the shopping buggy, which may well be filled with a customer's selections, could obstruct a customer's view of the floor. Further, at or near an intersection of aisles, a customer's view of the intersecting aisle is obviously blocked by shelving so that the floor cannot be seen ahead, and customers must be on the lookout for other customers who may be crossing or turning, which could distract a customer from looking at the floor ahead of her.

Appellee further testified that, once she realized the floor was being cleaned, she was cautious and looked for other wet spots as she proceeded onward to the meat department. However, even when exercising great caution and with knowledge of the danger, appellee slipped again, but did not fall, on a "drop" of clear liquid approximately one to two inches in diameter, which she could not see until after her slip. This demonstrates how difficult it was, in the exercise of ordinary care, to discover the presence of such cleaning fluid on the floor. Clearly, based on the evidence, material issues of fact exist for jury determination as to whether appellee, who was pushing a shop-

ping buggy, could have seen the sheen of the narrow strip of damp floor prior to reaching it and, if she could have seen the sheen of the narrow strip of damp floor, whether she could have seen it in time to avoid the danger, particularly when this danger was at or near the corner of intersecting aisles.

Moreover, on summary judgment, the trial court can draw only reasonable, favorable inferences and is not permitted to draw negative inferences against the plaintiff. The special concurrence disagrees and cites to OCGA §§ 24-1-2 and 24-4-9 in support thereof. Regretfully, the special concurrence's citation to OCGA §§ 24-1-2 and 24-4-9 with regard to a trial court's function on summary judgment strikes at the heart of a fundamental misunderstanding of the process of summary judgment and its governing laws. Both Code sections cited by the concurrence speak to the *jury's* function with regard to *trials*. OCGA § 24-4-9 states that "[i]n arriving at a verdict, the *jury*, from facts proved, and sometimes from the absence of counter evidence, may infer the existence of other facts reasonably and logically consequent on those proved." (Emphasis supplied.) OCGA § 24-1-2 states that "[t]he object of all legal investigation is the discovery of truth. The rules of evidence are framed with a view to this prominent end, seeking always for pure sources and the highest evidence." See also *Holcomb v. State*, 198 Ga. App. 547 (402 SE2d 520) (1991) (OCGA § 24-1-2 capsulizes the raison d'etre for the rules which govern *trials*).[3] Contrary to the ideological perspective of the special concurrence, the purpose of summary judgment is not the same as that of trial, and the trial court on summary judgment does not fulfill the same function as a jury with regard to the drawing of inferences and the ascertainment of the truth thereof. On summary judgment, a trial court determines *only* whether a material issue of fact *exists*, and such determination does not include the "discovery of [the] truth" of such fact (OCGA § 24-1-2) or permit a frustration of a plaintiff's constitutional right to a jury trial "by infer[ring] the existence of other facts" from predicate evidence (OCGA § 24-4-9).

Indeed, the special concurrence provides an ideal illustration of the fundamental error in usurping the role of the jury and the function of the trial process in its example of appropriate "inferential" reasoning. When there is uncontradicted testimony by the plaintiff that she was not watching where she was going, the special concurrence takes the position that the trial court can infer from such facts that she *would* have the opportunity to avoid the danger, had she seen it. Even where there is such uncontradicted testimony as in the

---

[3] See also *DeVane v. Smith*, 154 Ga. App. 442 (268 SE2d 711) (1980) (OCGA § 24-4-9, res ipsa loquitur, creates a mere inference of fact, and not a presumption of truth; it is for the *jury* thereafter to draw the inference of negligence from the inferred fact).

special concurrence example, the real question that must be decided is whether the plaintiff *could* avoid the danger in the exercise of reasonable care. A plaintiff's ability to avoid a danger does not necessarily flow from the ability to see the danger. Even when a plaintiff is paying strict attention to her surroundings, once she observes a danger, it is sometimes too late to avoid it, regardless of the degree of care used. In reality, the special concurrence's illustration provides no facts, either in support of or in contradiction to the *avoidance* of the danger. The special concurrence takes particular facts about observance and reaches a generalized conclusion concerning avoidance. Such *in*ductive reasoning is precisely why the process of inferring the existence of facts from proven evidence belongs only to a *jury* in deciding the merits of a case, not to the court in deciding to grant summary judgment. OCGA § 24-4-9. "[I]t is preferable not to have a single trial judge stand in the shoes of the several men and women of various backgrounds who make up a jury and determine what inferences they may draw from the evidence. It is for this reason that trial judges should grant a motion for summary judgment or directed verdict only where the evidence is truly clear, palpable and *undisputed*. *Pique v. Lee*, 218 Ga. App. 357, 359 (461 SE2d 302) [(1995)]." (Emphasis supplied.) *Service Merchandise v. Jackson*, supra at 898-899.

Certainly, the special concurrence's urged ability to draw "inferences" has absolutely nothing to do with a defendant's burden to show an "absence" of a material issue of fact as to an essential element of the plaintiff's claim. Inferences cannot be drawn from an *absence* of fact.[4] The "inference" in the illustration is actually an implication that the special concurrence has *chosen* to make on behalf of the defendant, which choice is without basis in fact or law on summary judgment.[5]

Along these same lines, an inference of fact such as the one alleged in the special concurrence's illustration would not form a basis by which a court could determine that a defendant met its burden of proof on summary judgment, because a decision as to the merits of the inferred fact would be implicit in such determination.

---

[4] "Inferences are deductions or conclusions which with reason and common sense lead the *jury* to draw from facts which have been *established by the evidence* in the case." (Emphasis supplied.) Black's Law Dictionary, 5th ed., p. 700.

[5] In addition, it must be noted that the "negative inference" in the special concurrence's illustration clearly does not address an essential element of plaintiff's claim but, instead, goes to the affirmative defenses of contributory negligence and comparative negligence, e.g., avoidance and equal knowledge. Although a plaintiff has a burden of *production*, i.e., presenting any evidence which creates a material issue of fact as to the affirmative defense, a plaintiff has no duty to present evidence *disproving* an affirmative defense on summary judgment. See *Hodge v. SADA Enterprises*, supra at 691.

Simply because a fact *could* be inferred, it does not follow that it *should* be inferred. An inference that contradicts an assertion in the complaint simply provides a jury question. "It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the *ultimate conclusion* as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable." (Punctuation omitted; emphasis supplied.) *McCarty v. Nat. Life &c. Ins. Co.*, 107 Ga. App. 178, 183 (2) (129 SE2d 408) (1962); see also *Baxter v. Ga. Fed. Sav. &c. Assn.*, 152 Ga. App. 753, 754 (264 SE2d 242) (1979).

Since a court's role on summary judgment does not encompass a determination as to the truth of any factual issue, a "negative" inference such as that in the special concurrence's illustration may not be drawn in order to defeat a plaintiff's claim. Whether a negative inference truly arises from other proved facts and a determination as to the truth thereof are questions for the jury at trial, not for the bench on summary judgment.

In the case sub judice, FoodMax failed to meet its burden of piercing the allegations of appellee's complaint, and the trial court properly denied FoodMax's motion for summary judgment.

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur specially.*

BIRDSONG, Presiding Judge, concurring specially.

Although I agree the trial court properly denied FoodMax's motion for summary judgment, I write separately because I cannot agree with the analysis the majority used in reaching that result. In my view, the majority misconstrues and misapplies our law concerning summary judgment, inferences, active negligence, and distractions.

1. Because Taylor slipped on water intentionally placed on the floor by FoodMax's cleaning company, consideration of the *Alterman Foods* foreign substance analysis is unwarranted (see *Alterman Foods v. Ligon*, 246 Ga. 620, 623-624 (272 SE2d 327)), and FoodMax's arguments to the contrary are without merit. Consequently, to establish her cause of action Taylor only was required to show an act or omission by FoodMax that was the proximate cause of her injury and which she could not have avoided through the exercise of ordinary care. Id. at 624. Under the evidence in this case, Taylor successfully carried that burden. Thus, I concur that the trial court did not err by denying summary judgment to FoodMax.

2. I am concerned that the majority's expansive and, I believe, erroneous, opinion could, if unchallenged, result in a framework for

consideration of slip and fall cases on summary judgment so that regardless of the evidence summary judgment could never be granted. Neither attorneys, judges, nor citizens of this State, however, would be well served by that result. Moreover, I am concerned also that this result would be achieved through altering existing law, seemingly by relying on existing precedent, while, in fact, misconstruing or misapplying it.

Also, I believe the time has come for this Court to stop tacitly endorsing, through judicial silence, any published opinion suggesting that summary judgment is some scheme created to strip deserving plaintiffs of their right to jury trials. These statutory procedures have been a part of Georgia law for three decades and are an integral part of our Civil Practice Act. Further, these procedures, when applied with an even hand, serve both the interests of justice and judicial economy well. Of course, *granting summary judgment is a serious matter that should not be undertaken lightly*. I know of no one who believes that it should be. *It is also a serious matter to deny summary judgment when the law and the facts demand otherwise*. In this connection, it is important to remember that "[t]he right to a jury trial as guaranteed by the Seventh Amendment to the United States Constitution is not infringed where, as here, the jury would have no role since there are no issues of material fact in dispute. See *Barrett v. Independent Order of Foresters*, 625 F2d 73 (5th Cir. 1980)." *Bledsoe v. Central Ga. Production Credit Assn.*, 180 Ga. App. 598, 599 (4) (349 SE2d 821). Accord *CM3, Inc. v. Assoc. Realty Investors/Prado*, 201 Ga. App. 428, 429 (411 SE2d 320).

Thus, it is unlikely that the cases in which summary judgment is properly granted would actually be decided by the jury because the grant of summary judgment shows that on the available evidence a directed verdict should be granted. If this is the expected result, I see little utility and great waste in such a procedure. Consider the numerous cases under our *former* summary judgment procedures in which appellate courts recognized that even though summary judgment was not authorized because the movant had not disproved the nonmoving party's case, when the burden of proof shifted, it was likely that the nonmoving party could not prove its case. See, e.g., *Winn-Dixie &c. v. Ramey*, 186 Ga. App. 257 (366 SE2d 785). It is hard to comprehend what would be gained by a return to such procedures. Surely there would be no benefit to the litigants who must fund the litigation, or to the taxpayers who must pay ultimately for such cases to clog already full trial dockets.

Thus, it is recognized that the purpose of summary judgment is to eliminate "jury trials where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. OCGA § 9-11-56 (c)." *Porter v. Felker*, 261 Ga. 421 (405

SE2d 31). Of course, *Porter v. Felker* merely restated what our Supreme Court stated 20 years earlier in *Summer-Minter & Assoc. v. Giordano*, 231 Ga. 601, 603 (203 SE2d 173): "The purpose of the Summary Judgment Act is to eliminate the necessity for a trial by jury where, giving the opposing party the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence, there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. In *Crutcher v. Crawford Land Co.*, 220 Ga. 298, 303 (138 SE2d 580), [it was] stated: We believe the Act was clearly intended to dispose of litigation expeditiously and avoid useless time and expense to go through a jury trial, even though the petition fairly bristles with serious allegations, if when given notice and opportunity to produce affidavits by persons competent to testify on their own knowledge to the truth of such allegations the pleader does nothing to contradict the affidavits of the movant which show there is no right of the opposite party to prevail. And, it was noted on p. 304 of the opinion that, [i]n this case the petitioner had his choice of producing counter-proof and thus make an issue of fact, or do nothing, that is, create no issue of fact and suffer judgment." (Citation and punctuation omitted.)

3. The majority's conclusion that movants for summary judgment are *never* allowed the benefit of inferences is contrary to our law and does not take into consideration the posture of the case when trial courts consider motions for summary judgment. In these proceedings the rules on admissibility of evidence apply. *Strickland v. DeKalb Hosp. Auth.*, 197 Ga. App. 63, 65 (397 SE2d 576). "Evidence offered on motion for summary judgment is held to the same standards of admissibility at trial, and evidence inadmissible at trial is generally inadmissible on motion for summary judgment." (Punctuation omitted.) *Hall v. Cracker Barrel &c.*, 223 Ga. App. 88, 92 (476 SE2d 789). Further, "[a] motion for summary judgment is analogous to a motion for a directed verdict. OCGA § 9-11-50. The function of the trial court in ruling on either requires the trial court to determine whether the movant is entitled to a judgment as a matter of law on the facts established and whether there is a genuine issue as to any material fact. OCGA §§ 9-11-56; 9-11-50; *Standard Accident Ins. Co. v. Ingalls Iron Works Co.*, 109 Ga. App. 574, 575 (136 SE2d 505) (1964). If the movant can show the court that any essential element, under any theory of recovery, is missing and incapable of proof, the movant is entitled to summary judgment as a matter of law, notwithstanding any issue of material fact regarding any other essential element. *Waldrep v. Goodwin*, 230 Ga. 1, 2 (195 SE2d 432) (1973). When a motion for summary judgment is made and properly supported, the opposing party must respond and set forth specific facts showing a genuine issue for trial or else summary judgment, if appropriate,

shall be entered. OCGA § 9-11-56 (e); *Meade v. Heimanson*, 239 Ga. 177, 178 (236 SE2d 357) (1977). Summary judgment was designed to enable the trial judge to filter out sham issues which may cause needless and time-consuming litigation. 'The trial judge must separate what is formal or pretended in denial or averment from what is genuine or substantial, so that only the latter may subject a party to the burden of a trial.' *Holland v. Sanfax Corp.*, 106 Ga. App. 1, 5 (126 SE2d 442) (1962)." *Porter v. Felker*, supra at 421-422.

"When viewed in proper perspective under present practice in Georgia, summary judgment under our law is just what the name implies. It is an abbreviated trial, but of no less importance than any other trial on the merits of the case. One must prepare for a summary judgment hearing with the same thoroughness and expectation of finality one must contemplate for any trial." *Summer-Minter v. Giordano*, supra at 606. Consequently, " '[s]ummary judgment may be granted on evidence that would compel the direction of a verdict; and should be denied when a directed verdict would be improper.' 6 Moore's Federal Practice, Para. 56.15[4], p. 56-522." *Eiberger v. West*, 247 Ga. 767, 769 (281 SE2d 148). Of course, when a trial court considers whether a directed verdict should be granted, it is authorized to consider whether the deductions, i.e., inferences, demand a particular verdict. See OCGA § 9-11-50 (a).

The correct rule regarding inferences is that "[t]he party moving for summary judgment has the burden of showing the absence of a genuine issue of any material fact and if the trial court is presented with a choice of inferences to be drawn from the facts all inferences of fact from the proofs proffered at the hearing must be drawn against the movant and in favor of the party opposing the motion. *United States v. Diebold*, 369 U. S. 654, 655 (82 SC 993, 8 LE2d 176) (1962)." *Lewis v. C & S Nat. Bank*, 139 Ga. App. 855, 860 (229 SE2d 765). Moreover, a nonmovant is only entitled to have *reasonable* inferences drawn in his favor. *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (405 SE2d 474).

4. Additionally, although the majority cites and quotes from *Lau's Corp. v. Haskins*, supra, the majority nevertheless apparently refuses to accept *Lau's Corp.*'s holding that "[a] defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case." Id. at 491. "The burden on summary judgment is on the movant to *show* that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. OCGA § 9-11-56 (e); *Meade v. Heimanson*, [supra]." (Emphasis supplied.) *Riley v. H & H Operations*, 263 Ga. 652, 655 (3) (436 SE2d 659).

Although, of course, the movant could carry this burden, as the majority states, by presenting evidence to negate an essential ele-

ment of the nonmovant's case, the movant has no burden to do so (*Lau's Corp. v. Haskins*, supra at 495), and it is not useful for this Court to attempt to revise or redefine the burden stated in *Lau's Corp.* so that a different burden appears to be placed on movants for summary judgment from the one stated in *Lau's Corp.* at 495.

This means that defendants/movants need not prove affirmatively that plaintiffs failed to exercise ordinary care for their own safety when the records show that plaintiffs testified they were not watching where they were going, but if they had they could have seen the foreign substance on the floor. If that evidence remains undisputed, the trial court is entitled reasonably to infer that the plaintiff would have avoided the danger. "In arriving at a verdict, the jury, from facts proved, and sometimes from the absence of counter evidence, may infer the existence of other facts reasonably and logically consequent to those proved." OCGA § 24-4-9. Even though this Code section refers to "the jury," because the court in ruling upon a motion for summary judgment exercises the same function as if it were ruling upon a motion for directed verdict, the court is authorized to make the same inferences the jury would be permitted to reach. "If there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed." OCGA § 9-11-50 (a).

If plaintiffs wish to contend they could not have appreciated the danger even if they had seen it, or could not have avoided the danger, it is the plaintiffs' burden to point "to specific evidence giving rise to a triable issue" (*Lau's Corp.*, supra at 491) on these points in their responses to the motions for summary judgment. Neither trial courts nor this Court, however, is allowed to "infer" that some unknown reason may exist why the plaintiff was unable to either appreciate the danger or was unable to avoid the danger if seen. Such conclusions are not inferences, but gross speculations. See generally *Derry v. Clements*, 197 Ga. App. 173, 174 (397 SE2d 594) (inference cannot be based on mere conjecture or possibility).

Consequently, the majority's "negative inference" theory is contrary to *Alterman Foods* and *Lau's Corp.*, and in these circumstances is without the support of legal authority. Attempting to limit the trial court's authority to draw *reasonable inferences* of fact in summary judgment cases by labeling a particular judicial determination as a negative inference also runs contrary to the statutory object of the rules of evidence. See generally OCGA § 24-1-2.

5. Also, the majority's statement that the plaintiff in this case is excused from watching where she was going because she was distracted by looking at plants on display is contrary to our law. See *Harper v. Kroger*, 212 Ga. App. 570, 571 (443 SE2d 7).

6. Moreover, the majority's active negligence theories and its effort to merge active negligence concepts in slip and fall cases are contrary to Supreme Court precedent and were rejected by this Court in *Adams v. Sears, Roebuck & Co.*, 227 Ga. App. 695 (490 SE2d 150) and *Hartley v. Macon Bacon Tune*, 227 Ga. App. 679 (490 SE2d 403).

Although I concur with affirming the trial court, the better practice would be to dismiss the appeal as having been granted improvidently.

I am authorized to state that Judge Ruffin joins in this special concurrence.

DECIDED SEPTEMBER 9, 1997.

*Jones, Cork & Miller, Timothy Harden III*, for appellant.
*Sims, Fleming & Spurlin, Robert D. Bryan*, for appellee.